# Berger *versus* Smull & Sons.

*Warrant of Arrest and Practice under Act 12th July* 1842.—*Burthen of Proof, when cast on Defendant.*—*Affidavit, when sufficient.*—*Supreme Court will not inquire into the merits of the Case on* Certiorari.

1. The *ex parte* affidavit of complaint, on which a warrant of arrest may issue, under the Act of 12th of July 1842, after being used to procure the warrant, is so far evidence upon the hearing before the judge, as to cast the burthen of proof on the defendant.

2. An affidavit, disclosing the nature and amount of the debt, and charging that the defendant has property which he fraudulently conceals, and unjustly refuses to apply to the payment of his indebtedness, that he has removed and disposed of large amounts of property to defraud his creditors, is sufficient to authorize the issuing of a warrant of arrest.

3. The Supreme Court, on *certiorari*, will not review the opinions of the judge granting the warrant of arrest, upon the proofs, before him, but the regularity of the proceedings only.   If they are in all respects regular, his judgment must be executed.

CERTIORARI to the Honourable GEORGE W. STEIN, one of the associate judges of the Court of Common Pleas of *Northampton county*.

To August Term 1858, No. 84, an action on the case was brought by Thomas Smull, Thomas L. Smull, John Burke, and Jonathan Thorne, partners, trading under the firm and name of Thomas Smull & Sons, against Samuel J. Berger.

On the 8th of February 1861, Thomas Smull appeared before the Honourable GEORGE W. STEIN, and made an affidavit in said

[Berger v. Smull & Sons.]

case, in which he stated that the plaintiffs therein were dealers in leather, in New York, and that the defendant, at the time of the transaction constituting the cause of action on which the suit was brought, to wit, from about September 29th 1856 to June 22d 1858, was a tanner, having, or being reported to have a tannery in Monroe county, Pennsylvania. That there were dealings between plaintiffs and defendants, under which plaintiffs bought hides for defendant at a commission of 5 per cent., and sent them to defendant, who tanned and returned them to plaintiffs, to be sold at a commission of 6 per cent. That in the course of these dealings plaintiff had loaned considerable money to defendant, and disbursed money for his use, and had, from time to time, rendered to him full accounts of their transactions, showing balances due, which were assented to—that at the time of bringing suit there was due from the defendant to the plaintiffs a balance of $19,598.47, as per account current embodied in the affidavit, which they claimed with interest from June 2d 1858.

The affidavit then set forth, at great length, the conduct and declarations of defendant, which the affidavit averred were evidence of an intention to cheat and defraud plaintiffs out of their said claim, and which consisted of a sale of all his property for cash at reduced and ruinous prices; a refusal to furnish a statement of his property, or account for the use he had made of the proceeds of his sales; his removal to Minnesota with his family, and alleged investments there beyond the jurisdiction of this court; his repeated assertions that plaintiffs should never have a cent of their claim; to which were added charges of a fraudulent concealment of his property, &c., &c.

Under this affidavit a warrant of arrest, under the 3d and 4th sections of the Act of July 12th 1842, entitled "An act to abolish imprisonment for debt, and to punish fraudulent debtors," was applied for, awarded by the judge, and, together with copies of the papers required by the Act of Assembly to be served on the defendant, placed in the hands of the sheriff of Northampton county. On the same day the defendant was arrested, and brought before the judge, when, at the request of the parties, the hearing was postponed until Tuesday, the 12th of February 1861, the defendant giving bond with sureties in the sum of $10,000 conditioned for his appearance.

On the 12th of February 1861, the defendant and his counsel appeared, and presented, read, and filed the following demurrer :—

"The defendant, by protestation, not confessing or acknowledging all or any of the matters and things in said complaint to be true, in such manner and form as the same are therein set

[Berger *v.* Smull & Sons.]

forth and alleged, doth demur thereto, and doth show that said complainant hath not made or stated such a case as doth or ought to entitle him to such warrant of arrest against this defendant; wherefore he demands the judgment of this honourable court, whether he shall be compelled to make other answer to said complaint, or the matters therein contained, and prays to be hence dismissed with his reasonable costs in this behalf sustained.

"Signed, "S. J. BERGER."

He also filed an "answer" to the affidavit, denying the charges of fraud—giving his version of their transactions, and his reasons for refusing to pay the claim as presented, without a compromise in which the proper amount due to plaintiffs should be ascertained and agreed upon.

This answer was signed by the defendant, but was not sworn to.

After several preliminary meetings and adjournments, the parties, with their counsel, finally appeared before Judge STEIN, on the 14th day of February, A. D. 1861, at two o'clock in the afternoon, at the court-house at Easton, where the counsel for the plaintiff inquired of the defendant whether the defendant was done; to which question the counsel for the defendant replied in the affirmative. Thereupon, the plaintiffs, by their counsel, without offering any evidence in support of the allegations contained in the said affidavit (which, they contended in argument, was sufficient evidence), applied for the commitment of the defendant, in accordance with the provisions of the 8th section of the Act of the 12th of July, A. D. 1841, aforesaid, which application was resisted by the defendant. This application was thereupon argued by counsel for the plaintiff, and by counsel for the defendant, after which the case was adjourned to Monday, the 18th day of February, A. D. 1861, at two o'clock in the afternoon, at the court-house at Easton, the defendant giving a bond, with sufficient sureties in the sum of $10,000, to appear then and there to abide further action in the premises. On the said 18th of February, A. D. 1861, at two o'clock in the afternoon, at the court-house at Easton, the parties again appeared, pursuant to the last-mentioned adjournment, whereupon the following opinion was delivered by Judge STEIN:—

"Thomas Smull, one of the plaintiffs in the above action, made an affidavit before me on the 8th day of February 1861, on which a warrant was issued by me for his arrest under the Act of 1842, providing for the abolishment of imprisonment for debt. The defendant was arrested on the warrant, and a hearing has been had before me.

"The counsel for the defendant having presented and filed a demurrer to the sufficiency of the plaintiff's affidavit, on which

the warrant issued, and have also presented and filed an answer in writing by defendant, without prejudice to his demurrer, but not verified by his oath. The defendant declined to verify his answer by oath, and neither plaintiff or defendant has examined witnesses before me.

"Several questions have been discussed by counsel in the argument, which must be disposed of. First—Is the affidavit sufficient to authorize the issuing of the warrant and arrest of defendant? Second—Is the answer filed by defendant, but not verified by oath, to be considered as a controverting of the facts and circumstances alleged in plaintiffs' affidavit within the meaning of the Act of Assembly? Third—If it is not, is it to be treated as no answer, and is the affidavit made by the plaintiff sufficient to substantiate the charge made therein against the defendant, when it is unanswered by the defendant either by his own oath or by the testimony of witnesses?

"In regard to the first question, it was my duty to consider the sufficiency of the affidavit before I issued the warrant. This was done, and upon a careful examination I thought that it authorized me to issue the warrant; and after listening attentively to the arguments of learned counsel, and a careful reconsideration of the question, I must say that my opinion has not been changed.

"It is scarcely necessary to premise that every allegation in the affidavit must be taken as true.

"The affidavit of plaintiff alleges that during the time the transactions occurred which are the foundation of his cause of action, viz., from September 20th 1856 to about the 22d of June 1858, the defendant was engaged in the pursuit of a tanner in Monroe county. That the plaintiffs are leather-dealers in New York, and there was a course of dealing between the parties in which the plaintiffs bought hides for defendant on commission, and sent them to defendant, who tanned them and sent the leather to plaintiffs to be sold on commission. The indebtedness of defendant to plaintiffs is made up of charges for purchases of leather, loans of money, payments for freight, &c. The amount due to plaintiffs is $19,598.47. This course of dealing is by no means a fact to be disregarded in considering this affidavit, as it shows that the plaintiffs had just reason to expect consignments of leather to reimburse them for their advances and disbursements. In December 1857, the defendant sold his tannery to Messrs. Barnet & Shnyder. The learned counsel for defendant say that the defendant informed the plaintiffs of this fact. The defendant was at the house of the affiant, Thomas Smull, in Brooklyn, on the 1st of April 1858, and there told him he had invested a large sum of money in bond and mortgage, but these are not the terms to convey the idea that a man has conveyed

3 Wr.—20

his property. There is nothing in the affidavit which asserts that he had communicated the fact of this sale to Barnet & Shnyder; on the contrary, the language he used rather imported that he had surplus means for which he sought an investment. Some time after this, he ceased to ship plaintiffs any leather, and, on being written to to account for the delay, he requested an interview with affiant at Bethlehem. The interview was had on the 19th of June 1858; and not until he is closely pressed, does he confess that he has sold the leather to Messrs. Barnet & Shnyder. This purchase by Barnet & Shnyder, the affidavit alleges, was made at the special request of defendant, and that it was for some four or five cents less per pound than the leather cost the defendant. The affidavit further alleges repeated offers of defendant to pay the plaintiffs $7000, if they would give him a receipt in full. This the plaintiffs declined to do unless the defendant would give them a full and fair statement as to what became of his property; but this the defendant refused to do. The defendant's counsel say this offer of $7000 was an offer of compromise of a disputed claim, but I cannot understand the affidavit to read thus, but, on the contrary, it asserts a just indebtedness of $19,548.47, and repeated offers of $7000 to be taken in full of it, accompanied with persistent refusals to disclose what had become of his property, and declaration of the defendant not to pay them a cent because his offers had not been accepted.

" The investment of the defendant of his means, or a portion of them, in Minnesota, and his intention to remove there, would not of themselves constitute fraud; but they are not entirely to be disregarded in connection with other facts and circumstances alleged in the affidavit.

" The counsel for defendant have taken exception to the affidavit, because certain facts alleged therein are not alleged to have been done fraudulently; I don't think it necessary that each fact as it is alleged, should be alleged to be done fraudulently. Fraud is to be inferred from a number of facts and circumstances, and it is sufficient if the inference of fraud at the close of the affidavit is justified by the preceding allegations therein. I think they are sufficient to justify the allegation that the defendant has property which he has disposed of to defraud his creditors, and that he has property which he fraudulently conceals, and that he is about to remove property without the jurisdiction of this court, with intent to defraud the said plaintiffs. The plaintiffs have no judgment, and therefore the defendant is not liable for a refusal to apply property to the payment of their debt.

Second. Considering then the affidavit to be sufficient, is the answer filed by defendant, but not verified by oath, to be con-

[Berger *v.* Smull & Sons.]

sidered as a controverting of the facts and circumstances alleged in plaintiffs' affidavit, within the meaning of the Act of Assembly? This proceeding has been justly said by Chief Justice Savage, in Spencer *v.* Hilton, 10 Wendell 611, not to be in perfect analogy to any proceedings known to our laws. It is not exactly like a proceeding to hold to bail, as it existed before this act, for the affidavit on which the warrant issued may be controverted; nor is it like a bill in chancery, for the defendant is not obliged, though he may answer it under oath. When a defendant was arrested before the act, or where he is arrested now in a case to which the Act of 1842 does not apply, the affidavit to hold to bail is conclusive, and cannot be controverted. The Act of 1842 allows an arrest of the defendant in an action on a contract only on a warrant issued by a judge, and founded on an affidavit establishing to his satisfaction certain species of fraud. This the defendant may controvert, but how? By his simple negation of the plaintiff's affidavit? I think not. The plaintiff has, by his oath, sworn to facts which place defendant without the pale of the statute, and there he must stay, if he makes no answer to it. This, I think, is the construction put on a similar act in New York in 10 Wendell 611, and in our own state in Gosline *v.* Place, 8 Casey 520. It is not like the case of a warrant on a criminal proceeding, or a case of summary conviction, say the judges in the case above cited. The right to controvert the allegations of the plaintiff's affidavit is for the protection of the defendant; he is not bound to become his own accuser if he is conscious of the truth of the charge against him; but if his conscience acquits him, he has a right to become a witness in his own cause, and to establish his innocence by his own oath; for this purpose he is entitled to have copies of the affidavit served on him, so that he may come prepared to meet the charge against him, by his oath, or by other proof, if he chooses. I am informed by the president judge of the court, that the practice in the District Court when he was on that bench, was to commit, if the affidavit was sufficient, and was not met either by the defendant's denial under oath, or by countervailing proof. I am therefore of opinion that the answer, not being verified by oath, is to be treated as no answer.

"Is the charge then substantiated? An affidavit has been made which satisfies the judge that the defendant is liable to arrest under the statute. To this there is no answer. Surely, a charge is substantiated, when, *primâ facie*, a case is made out which is not answered.

"Therefore, all that remains for me to do in this case, is to direct the defendant to be committed in default of his executing a bond as provided by the Act of Assembly.

"And, thereupon, he made and published the following order:—

"I do, therefore, order and decree that the defendant, Samuel J. Berger, be committed to the jail of this county, to be there detained until he be discharged by law, unless he shall pay the debt or demand claimed, with costs of suit, and of the proceedings against him, or give the security as required in the ninth section of the Act of Assembly passed July 12th 1842, entitled, 'An Act to abolish imprisonment for debt, and to punish fraudulent debtors, or enter into a bond as required by the seventh section of said act."

Thereupon, the judge gave to the sheriff a commitment, reciting the affidavit of Thomas Smull, the proceedings before himself, and the foregoing order, and requiring the sheriff to detain the said Samuel J. Berger in his custody until he should be discharged by law.

Application was then made by the defendant for the removal of the case into this court, whereupon, on a special *allocatur* by Hon. WM. STRONG, a *certiorari* issued from the Supreme Court to the Hon. GEO. W. STEIN, commanding him to send up the record of his proceedings in the premises. The defendant was also discharged from the custody of the sheriff, on his entering jointly and severally, with one or more approved sureties, in the sum of $30,000, conditioned to be void if he should appear before the Supreme Court on the third Monday in March 1861, to abide and obey all orders of the court upon the *certiorari*, and not depart the court without leave, or, in default thereof, pay to the plaintiffs, within sixty days after final judgment, such sums of money and costs as should be adjudged against him in the suit pending in the Common Pleas of Northampton county. The recognisance to be taken, and the sureties to be approved by Judge STEIN, on notice to the counsel for the plaintiffs.

The error assigned was the making of the order of commitment, and the refusal of the judge to dismiss the complaint.

*Reeder* and *Green*, for plaintiff in error.—The order of commitment was made upon the complainants' affidavit alone, without other proof, after it was traversed by defendant's answer. The questions which spring from these proceedings for the decision of this court are :—

1. Does the *ex parte* affidavit of complaint, after being used to procure the warrant, become also absolute proof on the hearing, so as to cast the burden of proof on defendant ?

2. If so, then does this affidavit disclose facts sufficient to make out a case within the statute ?

If this shall appear to be even a *quasi* criminal or penal proceeding, the affirmative of this question cannot be maintained without the grossest oppression of the citizen—the denial of his

[Berger *v.* Smull & Sons.]

plainest, even his constitutional rights—and the subversion of universally recognised principles of the common law.

Article IX., sec. 9, Constitution of Pennsylvania, is to be taken as pervading all legislation, as completely as do the doctrines of the common law, from which it was derived. Whether a given proceeding is criminal or penal, is to be judged, not by its name or form, but by its effects upon those "indefeasible rights" of "life and liberty," "property and reputation," so carefully defined and secured in section 1 of the same article. This stringent proceeding is invoked in favour, not of a judgment or ascertained debt, but of a demand which, notwithstanding a litigation of nearly three years, and all the auxiliaries to a speedy judgment, of the provisions in regard to affidavits of defence, and compulsory arbitration, the law has not adjudged against us. Previous to the adoption of the Act of 1842, imprisonment for debt, before judgment, was *the right of the plaintiff in a suit pending, to be assured by confinement, or bail that the defendant's body would be forthcoming after judgment;* and the right, after judgment, to continue to imprison him until he surrendered his property without fraud. This law would seem to have been recognised and approved by section 16, article 9, of the Constitution, which provides that, without fraud, he shall not be *continued* in prison, if he shall surrender his property. Both the law and the Constitution contemplated only a surrender of property *after judgment*, and bail for *appearance* before.

The Act of 1842, proposing to confer a benefit on defendants charged only with breach of contract, and denying these benefits to persons charged as wrongdoers, and with breaches of contract approaching turpitude, relieves the former class of the supposed burden of liability to *capias ad respondendum*, and substitutes, as to them alone, the peculiar process of the 3d section. If it was intended they should be held guilty of what in the 20th section of the act is made an indictable offence, and compelled to pay the claim before judgment, or give security to pay it after judgment, or to give bond not to remove their property (in one contingency), or to apply for the benefit of the insolvent laws, upon a character and kind of proof which the law does not tolerate to prove the most trivial fact in litigations, criminal, penal, or civil, the defendants in the excepted actions may well congratulate themselves that they have been excluded from the benefits of this benign legislation, and left to bear the burdens of the old law.

The effect of the doctrine contended for on the other side, is that an *ex parte* affidavit, artfully prepared in secret, with all its ingenious half-disclosures, evasions, and reservations—its concealments of the extent of knowledge—its putting forth of facts upon belief and hearsay, and its ignoring of the distinctions

[Berger *v.* Smull & Sons.]

between true knowledge and hearsay—its security against cross-examination, and all the salutary tests incident to an examination "face to face," is held to be, for all the purposes of this proceeding, absolute proof of the existence of the debt—of the commission of acts which, in another form of proceeding, would bring criminal conviction and imprisonment, and which, in this form of proceeding (apart from the effect upon reputation), visit upon a defendant, who may be unable to pay, or give security to pay a contested claim, the penalty of being discharged as an insolvent debtor, and of surrendering up his property to trustees for the benefit of a plaintiff who, at some time after defendant has thus been stripped of his property, and ruined in his business, may turn out to be no creditor at all.

If this affidavit is evidence to compel the petition for the benefit of the insolvent laws, what good reason can be given for not using it in the same manner at the hearing of the petition, and procuring his committal for trial as a criminal?

The objections to the affidavit are, that the party making it is interested, and that it is *ex parte*, and protected from the tests of a cross-examination. Both objections are *primâ facie* good, and unless the words of the statute remove them, they must prevail.

The act provides for a trial of questions of fact, with all the machinery of the law—a tribunal with full powers—accuser and accused are brought face to face—the law contemplates witnesses, *subpœnas*, attachments, testimony by both parties, and a hearing and judgment upon a charge of fraud. The defendant may "*controvert*," and, "*at his option*," verify his allegations by his affidavit." What allegations? Surely the allegations by which he controverts. Nothing else can be made of the context. But he is to verify his controverting allegations *at his option*. He may verify them or not as he pleases, or, what is the same thing, he may put in these allegations with or without oath, at his option. But the judge below held—and it is indispensable to the adverse argument, that he must put in a sworn allegation, *or none at all*—that he has no *option*. He is not to refute, or confute, or disprove, but to controvert.

Again, we are not to "controvert" the *affidavit*, but "the facts and circumstances on which the warrant issued." The affidavit is not alluded to, and its production or use in evidence is not hinted at; but, as in any other case, *the facts of the accusation* are made the subject of dispute or controversy.

The act allows the warrant to issue on affidavits of other person or persons than complainants. If the adverse argument is correct, the complainant may examine all his witnesses in advance, put all his testimony into *ex parte* affidavits, secretly and unfairly got up, and overwhelm defendant with them on the

hearing, and thus evade the provisions of the statute for the examination of his witnesses at the hearing; which, if once judicially sanctioned, complainants will not be long in availing themselves of.

The opinion in the case of Spencer *v.* Hilton, 10 Wendell's Rep. 608, was unadvised. · It proceeds upon the assumption that *ex parte* proof, in a preliminary stage of proceeding, requiring only the exhibition of probable cause, is *proof* for all purposes at later stages—that the judge, having decided there was cause for the warrant, he must come to the hearing with a presumption of defendant's delinquency—that the legal object and effect of the first *ex parte* adjudication is not merely to produce the exit of the warrant, but to construct also a presumption to be used at the hearing.

The incidental bearing of isolated expressions in the case of Gosline *v.* Place, 8 Casey 520, is relied on as favouring the view of our opponents. But the only questions to be decided in that case were: 1. The effect of a defective affidavit, after the case had been heard without objection to the affidavit, and decided on its merits as appearing in the testimony of witnesses. 2. The effect of the contract being made out of the state. 3. The sufficiency of the commitment.

This proceeding is not to be considered analogous to the proceedings under the old law for holding to bail upon an affidavit of cause of action. The structure of that proceeding, so far as evidence was concerned, was to be purely *ex parte*, and witnesses were excluded. In this it is *inter partes*, and examination of witnesses is specially permitted and provided for. In that the purpose was to establish a presumption of indebtedness, and to obtain a bail-bond of so little risk that there was no hardship in procuring it. In this the purpose is to establish a presumption of fraud, turpitude, and even crime, and to compel actual payment, or security for payment. In that, the result was to leave defendant, *pendente lite*, with full dominion over his property and business. In this, to strip a defendant unable to pay or secure the alleged debt, of all his property and business, and force him into a ruinous liquidation before judgment.

The 7th section of the act goes far to solve the doubts which might exist upon this question, and would seem to contain language intended by the legislature to put it at rest, for it prescribes the state of things which must exist before a commitment can issue. " If such judge is satisfied that the *allegations of the complainant are substantiated*." If there is need to resort to lexicographers for a definition of " substantiate," it is found to be, " To establish by proof or competent evidence; to verify; to prove."— *Worcester.*

Not, be it observed, if they are *not disproved*, but if they are

[Berger *v.* Smull & Sons.]

established by proof. What need to wait for substantiation of allegations, if what complainant offers is proof, and not mere allegation? Proof cannot be substantiated.

The construction which the other side seek to force upon the statute, makes it in derogation of the rules of the common law, which is always discountenanced, and not to be adopted except in cases of the plainest necessity: Dwarr on Stat., p. 43; Borland *v.* Nichols, 2 Jones 43.

It is sought to justify the construction of the other side, by saying that the defendant might have testified if he chose, and in this manner made the decision of the question unnecessary. If it were pertinent to the case, or necessary to meet such an argument, we could assign satisfactory reasons for our course in the court below; but it can make no difference in our legal rights, whether we can or cannot; and the discussion of those reasons in arguing this question, would be a disrespectful obtrusion upon the attention of the court. The question is of the force and effect of complainant's affidavit before the judge is informed whether defendant testifies or not. If it is evidence on the hearing, it remains so after defendant is sworn. If it is not, his declining to be examined does not make it so. It is not a question of presumption of fact, but of a principle of law.

2. On the second point they argued that the affidavit was not sufficient to warrant the decision of the judge before whom the proceeding was had; that it did not disclose facts sufficient to make out a case under the statute, and that it established the fact that the plaintiffs' claim was disputed and litigated; that the offers to compromise were not evidence of fraud, or fraudulent concealment of property, but a *bonâ fide* effort to reduce the claim to its true amount; that no inference should be drawn against the defendant because of his refusal to furnish a schedule of his property, a bill of discovery being allowed only *after* judgment; that the expression of his unwillingness to pay was drawn from him by their refusal to reduce their claim by a proper compromise to a fair standard, and only meant to throw them back to their legal remedies. That his investments in Minnesota are proof that there was no desire to conceal property; that a mere removal is no evidence of fraud; and that the affidavit does not state such facts as fully and logically authorize the conclusions which the law demands: citing Nevins *v.* Merrie, 2 Whart. 500; Bromly *v.* Joseph, 3 Id. 10; Diehl *v.* Perie, 2 Miles 47; Benedict *v.* Whartenby, 2 Id. 131; Crane *v.* Fish, Id. 105; McCarrels *v.* Fredrickson, 2 Id. 132; Philad. Loan Company *v.* Isaac, 2 Id. 145; Hewitt *v.* Nicholson, 2 Id. 322; Dougherty *v.* Dougherty, 6 Penna. Law J. 153; Van Valkenburg *v.* The Recorder of Albany, 6 Hill 429; Masters *v.* Vanderlip, 1 Code Rep. 41; 3 Howard's Pr. Rep. 365; Whitlock *v.* Roth, 5 Howard's Pr. Rep. 143; Crandale *v.* Bryan,

[Berger v. Smull & Sons.]

5 Abb. Pr. Rep. 162; How. Pr. Rep. 48; Bell v. Muli, 11 Id. 255; Peel v. Elliott, 16 Id. 481; Frost v. Willard, 9 Barb. 440; and the following English cases:—Machu v. Fraser, 7 Taunt. 171; Balbi v. Batley, 6 Id. 25; Perkes v. Severn, 7 East 194; Taylor v. Forbes, 11 Id. 315; McTaggart v. Ellice, 4 Bing. 114; Dumford v. Messiter, 5 Maul. & Selw. 446; Latraille v. Hoepfner, 10 Bing. 334; Buckworth v. Levy, 7 Id. 251; Wolley v. Escudier, 2 Maul. & Selw. 392; Kelley v. Curzon, 4 A. & E. 622; Bell v. Thrupp, 2B.& A. 596.

*Charles & Max Goepp*, with whom was *Jehiel G. Shipman* and *Henry D. Maxwell*, for defendants in error, contended that the undisputed and indisputable facts exhibited a case that was covered with badges of fraud, and that in form and in substance the affidavit was everything that the Act of Assembly required.

That the proceeding was in no sense a criminal one, as was held in Gosline v. Place, 8 Casey 529, but simply an arrest for debt, under the regulated supervision of a judge, instead of the arbitrary and badly controlled discretion of the party, similar in some respects to a rule on a party to show cause why he should not give bail: 4 Penna. Law J. 330; 4 Hill 581; Id. 605; 15 Wend. 461; 3 Am. Law J. 374. The proceeding is a civil one, in which there is no adjudication of guilt, and therefore no presumption of innocence. A question of precaution, not of ascertainment; a matter of process, not of decision; there is no judgment, nor is it fair to say there is sentence of imprisonment.

These conclusions have already been drawn in this and other states, by the courts. Spencer v. Hilton is directly in point. The argument made against that case here is based on the theory that the purpose of this proceeding is to punish the defendant, not to protect the plaintiff. This supposition is fallacious. The judge below was satisfied that the allegation of the complainant was true, when he issued the warrant. If the defendant, when he has an opportunity to prove it unfounded, declines to do so, the judge must needs decide the same way, and issue the commitment.

This commitment alone is what this court have to consider; the sufficiency or insufficiency of the affidavit is not before them. That has been passed upon by the judge, to whom, by the law, this inquiry was committed, and his decision cannot be reversed here, notwithstanding the demurrer: Commonwealth *ex rel.* McCabe, 22 Penna. St. Rep. 463; Commonwealth v. Nathans, 5 Barr 125; Rex v. Morly, 2 Burr 1042; Carpenter's Case, 14 Penna. St. Rep. 487; Mauch Chunk v. Nescopeck, 24 Id. 49.

If it could be reviewed here, the affidavit abundantly justified the judge.

The plaintiffs were only bound to show a *primâ facie* case.

The judge must look at the facts and circumstances; but the defendant must controvert both. In the investigation of fraud, great latitude is allowed: Graham *v.* Smith, 1 Casey 326; Railroad *v.* Hose, 10 Id. 215. Probable cause in the first instance is enough: Gosline *v.* Place, 8 Casey 520; Commonwealth *v.* McCabe, 11 Harris 450; Hall *v.* McKnight, 3 American Law J. 380.

A mere barren denial by plaintiff is insufficient to require a judge to reverse the decision made when the warrant was issued.

The cases in 10 Wendell, and 8 Casey, above cited, are clear as to this.

This demurrer was an admission of the facts set forth in the affidavit, which, as we have shown, meets every requirement of the statute.

The opinion of the court was delivered, May 7th 1861, by

WOODWARD, J.—This *certiorari* brings up the proceedings had before an associate judge of Northampton County, in an application for a warrant of arrest, under the 3d section of the Act of 12th July 1842, abolishing imprisonment for debt, at the suit of Thomas Smull & Sons, against their debtor, Samuel J. Berger, now the plaintiff in error.

Two points are taken on the part of the plaintiff in error: first, that the *ex parte* affidavit of complaint, after being used to procure the warrant of arrest, was not proof on the hearing before the judge, so as to cast the burthen of proof on the defendant; and second, if it was, then the affidavit did not disclose facts sufficient to make out a case within the statute.

The first point involves a construction of the Act of Assembly. The 1st section abolished imprisonment in any suit or proceeding, instituted for the recovery of any money due upon any judgment or decree, founded upon contract, or due upon any contract express or implied, or for the recovery of any damages for the non-performance of any contract, except in certain specified cases. The 2d section then takes up the class of cases, in which, by the previous section, imprisonment is abolished, and authorizes a creditor who shall have commenced a suit, or obtained a judgment, to apply to any judge of the proper court for a warrant to arrest the defendant, when the judge is to require "satisfactory evidence, either by the affidavit of the party making such application, or some other person or persons," that there is a debt due; that it is of a nature for which the defendant could not be arrested, and that the defendant is about to remove his property out of the jurisdiction of the court, with a view to defraud his creditors, or that he has done or is about to do any of the other several things that are enumerated in the

[Berger *v.* Smull & Sons.]

3d section. The affidavit is required to "establish to the satisfaction of the judge" one or more of these particulars. That done, he issues a warrant, which is to be accompanied with a certified copy of the affidavit, both of which are to be served on the defendant. Then, by the 6th section, the person so arrested may, on his appearance before the judge, "controvert any of the facts and circumstances on which such warrant issued, and may at his option verify his allegations by his affidavit; and in case of his so verifying the same, the complainant may examine him on oath, touching any fact or circumstance material to the inquiry, and the answers on such examination shall be reduced to writing, and subscribed by him." The judge is required, by the subsequent sections, to receive any other evidence that may be offered on either side; and if, on the whole, he is "satisfied that the allegations of the complainant are substantiated, he is to commit the defendant, unless he pays the debt, or gives security to pay it, or gives a bond to the complainant, with surety that he will not remove or assign his property, or that he will within thirty days apply for the benefit of the insolvent laws of this Commonwealth."

Such is a summary of the material provisions of the act. It is not, as is argued, a penal law; but, as was expounded in Gosline's Case, 8 Casey 526, simply an arrest for debt, under the regulated supervision of a judge. Before the Act of 1842, a plaintiff might, on affidavit of cause of action, take his *capias ad respondendum* at pleasure, and hold his debtor to bail, or throw him into jail. The act abolished that power of creditors. But the abolition was meant to enure to the benefit of honest debtors only. If the creditor could satisfy the judge of any of the statutory specifications, and thus establish a *primâ facie* case of fraud, either actual or contemplated, the act did not even then abandon the debtor to the mercy of the creditor, but subjected him to the scrutiny of the judge, after full notice of what was alleged against him, and with full opportunity to repel and explain every allegation of the creditor to the satisfaction of the judge. How can this be thought a harsh or unreasonable law? Why should it be subjected to the severe and unfriendly criticism which it received in the argument? Regarded as a substitute for the old *capias ad respondendum,* it is most indulgent to honest debtors.

But it is thought to be very unreasonable, and violative of the natural and constitutional rights of the citizen, that the preliminary affidavit of the plaintiff should be all the evidence he is required to produce. If the act compelled the judge to receive the complainants' affidavit as true, and shut the defendant's mouth from contesting it, then it would be just as oppressive as the common law was before the act was passed, and no more.

But the act does not give any conclusive effect to the affidavit. It makes it only evidence, like an oath in chancery, and it legalizes, with equal effect, the counter oath of the defendant. It contemplates a controversy before the judge. The allegations and affidavits of the parties, and any other proofs within their reach, make up the controversy. The substantiation or the overthrow of the allegations in the complainant's affidavit is the issue in this forensic battle, and not until the judge is satisfied that they are substantiated is the defendant pronounced liable to arrest. As was said in Spencer *v.* Hilton, 10 Wend., of a similar statute in New York, the analogy is not perfect to any proceeding known to our laws, and we must construe the statute by itself. But it is very plain what it means—it was competent for the legislature to pass such a statute, and it was executed with remarkable accuracy, not only by Judge Stein in this case, but by Judge Merrifield in Gosline's case, the only cases that have been up. Defendants, to whom such full opportunity to explain themselves is secured, have no reason to complain of the operation of the statute. It is impossible for creditors to fabricate false charges so ingeniously that an honest man cannot expose them by his own oath, or otherwise, and it is not to be presumed that a judge would refuse to accept as satisfactory an explanation that was full and sincere.

Notwithstanding, therefore, all that was urged under the first head of the argument, we see no ground in this part of the record for reversing the proceedings.

A few words as to the sufficiency of the facts disclosed in the affidavit. From the analysis which the counsel of the plaintiff in error has made of the affidavit, it appears that it disclosed the nature and amount of the debt, the defendant's refusal to furnish a statement of his property, his declaration that he would not give the plaintiffs a cent, his sale of his tannery and his leather, and his removal to Minnesota, and investment of moneys in property there. The affidavit itself contains a sterner statement of facts, and broadly charges that the said Samuel J. Berger has a large amount of property, which he fraudulently conceals and unjustly refuses to apply to the payment of his indebtedness to plaintiffs; that he has removed, and disposed of large amounts of property, for the purpose of defrauding his creditors; and that under the exemption laws of Minnesota, in which state he has established himself in business, real and personal estate to a large amount may be withheld from the reach of creditors.

It is a fact of some significance, which, no doubt, had weight with the judge, that the defendant was unwilling to avail himself of his statutory privilege to put in a sworn contradiction of these statements. He contented himself with a demurrer, and an

[Berger *v.* Smull & Sons.]

unsworn answer. Denying many of the allegations of the affidavit, and disclaiming all fraudulent purposes, he admitted himself to have received $24,000 for his tannery and personal property, part of which he had applied to debts, part had loaned out on good security, and part he had invested in Minnesota, where he admits he had removed, and intended to make further investments.

The result of the controversy so conducted was to satisfy the judge of the substantial truth of the allegations on the part of the plaintiffs. We are not to review his opinions of the proofs, but to see that his proceedings were regular. We find them regular in all respects. He had before him all that the statute required him to have, to give him the jurisdiction he exercised, and his judgment must be executed.

Strong, J., dissented.