Commonwealth of Pennsylvania ex rel. J. McD. Scott
v. John McAleese, Warden or Keeper of the County
Jail of Allegheny County, Pennsylvania.

*Jurisdiction, Superior Court—Habeas corpus—Revisory jurisdiction over
the decree is the test upon habeas corpus.*

Where the proceedings attacked by an application to the Superior Court
for a writ of habeas corpus were in the common pleas and by reason of
the amount in controversy are not reviewable in the Superior Court, that
court has no authority to discharge the relator even if his contentions are
well founded.

The Superior Court may not acquire jurisdiction by issuing a writ of
habeas corpus instead of certiorari. Its jurisdiction, upon habeas corpus,
to annul a decree or judgment of the lower court is limited by the revisory
jurisdiction over them.

*Fraudulent insolvency—Effect of bankrupt act not decided.*

The question as to the effect of the bankrupt act upon prior commit-
ments for trial on the charge of fraudulent insolvency and whether such
commitments are illegal and void because the statutory provisions under
which they were issued have been superseded by the bankrupt law of 1898,
not decided.

Argued May 1, 1899. Petition, by J. McD. Scott, for writ of
habeas corpus from commitment of C. P. No. 3, Allegheny Co.,
Feb. T., 1899, No. 324, on fraudulent insolvency. Before
RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D.
PORTER and BEEBER, JJ. Rule discharged. Opinion by
RICE, P. J.

Petition for writ of habeas corpus.

It appears from the petition that the relator made an assign-
ment for the benefit of creditors and that subsequently petitions
were filed by certain creditors to have him adjudged a bank-
rupt, which petitions were finally consolidated at No. 94 in
bankruptcy in the district court of the United States for the
western district of Pennsylvania. In October, 1898, a number
of creditors of the relator made application to Hon. S. A. Mc-
CLUNG for warrants of arrest under the provisions of the act of
July 12, 1842, whereupon the petitioner gave bond to the cred-
itors conditioned to apply for the benefit of the insolvent laws
of the state of Pennsylvania; that the discharge of the petitioner

was opposed by creditors and evidence produced tending to show that petitioner was guilty of fraudulent insolvency. Subsequently petitioner was committed by the court of common pleas, No. 3, of Allegheny county, for trial on the charge of fraudulent insolvency before the court of quarter sessions of Allegheny county and petitioner placed in custody of the jailor of said county of Allegheny under said charge and has been ever since the 21st day of January, 1899. The petition further averred that at No. 41, May term, 1899, on January 25, 1889, the circuit court of the United States for the western district of Pennsylvania, petitioner, filed his petition for a writ of habeas corpus directed to John McAleese, warden and keeper of the jail aforesaid. Whereupon upon hearing of petition and answer the said circuit court of the United States discharged the writ of habeas corpus and remanded the petitioner to the custody of the warden. Whereupon appeal was sued out to the United States circuit court of appeals and, after hearing and argument, the appeal was dismissed.

McPHERSON, district judge, filed the following opinion:

The defendant is the warden of the Allegheny county prison, and holds the appellant in custody by virtue of three commitments. One is for contempt of court in refusing to answer certain questions put to the appellant before a referee in bankruptcy; and as this commitment is formally unobjectionable, and has not been successfully attacked upon any ground appearing on the record, it would of itself support a judgment of affirmance. But for reasons that are satisfactory to us, although they need not be set out in this opinion, we have no doubt that the commitment for contempt should not be regarded as an existing process; and, accordingly, we shall treat it as furnishing no ground for the relator's detention.

It remains to consider the other two commitments. Concerning these, the following facts are undisputed: The appellant was a merchant doing business in the city of Pittsburg. On October 12, 1898, he made an assignment for the benefit of creditors; and shortly afterwards, in the same month, several creditors proceeded against him by petitions for warrants of arrest under the Pennsylvania statute of July 12, 1842, P. L. 339. The petitions averred that the relator had violated

section 3 of the statute in certain particulars, and accordingly warrants of arrest were duly issued by a judge of the court of common pleas of Allegheny county. During the month of November, and before hearings were had under the warrants, proceedings were begun in the district court of the United States for the western district of Pennsylvania, charging the relator with involuntary bankruptcy, and upon these petitions he was adjudged a bankrupt on December 3. Afterwards, in January, 1899, hearings were had by the state judge under the warrants of arrest, and, as a result of the action taken thereon (without stopping to detail the proceedings step by step), the court of common pleas of Allegheny county found as facts, that "there is just ground to believe that the said J. McD. Scott has concealed money, goods, building materials, plumbing materials, books and other valuable articles, being part of his estate and effects ; and that he has colluded and connived with other persons for such concealment; and that he has conveyed property to other persons for the use of himself, his family and friends, with the expectation of receiving future benefit to himself of them, and with intent to defraud his creditors." The consequence of this finding was, that the court committed the relator for trial upon the charge of fraudulent insolvency. After the hearing, the judge issuing the warrants was also satisfied that the relator had fraudulently contracted certain debts, and had concealed his property with intent to defraud his creditors ; and upon this ground he sent the defendant to prison under a separate commitment, there to remain "until he shall be discharged by due process of law."

These are the two commitments to be considered. They both conform to the Pennsylvania statute, and are formally regular in every respect. The relator asserts, however, that the statutory provisions upon which they rest have been superseded by the bankrupt law of 1898, and that henceforth proceedings to punish fraudulent insolvency cannot be pursued in the Pennsylvania courts. Insisting upon these objections, he sues out the writ of habeas corpus now before us, but failed to convince the court that he should obtain his liberty. The pending appeal is from the order of the circuit court discharging the writ and remanding the prisoner.

The relator's objection raises a federal question of which

the circuit court had jurisdiction, and which might have been considered by that tribunal if the learned judge had seen proper to entertain it. He may, indeed, have considered and decided it, but as he filed no opinion we are unable to determine by what reason he was moved to enter the decision now under review. We have before us merely his judgment, and if for any reason we find the judgment to be correct, our duty is to affirm it. We believe it to be correct, upon the sufficient ground that the state courts are competent to deal with the federal question already stated, and that no circumstances are shown requiring the courts of the United States to take the controversy into their own hands.

No doubt the question is important, for since the bankrupt act is not as wide in its scope as the Pennsylvania statute of 1842, and the related statute of June 10, 1836, P. L. 729, it is obvious that, if the relator's contention be sound, offenses now condemned, and properly condemned, by the state law, will escape punishment. But while the importance of the question must be conceded, we are nevertheless constrained to hold that the point should not be determined upon this appeal. The relator's remedy in the State courts should first be pursued; and if he fails to enforce there whatever right he may possess under the federal law, he may safely rely upon liberation at the hands of the courts of the United States. The tribunals of Pennsylvania are as much bound, and we believe them to be as willing, as are the federal courts to respect and enforce a right resting upon a law of the United States; and for the present we are bound to act upon the presumption that the relator will receive as complete protection at their hands as he would receive at ours. As the facts appear, we must follow the rule of policy that requires the courts of the United States ordinarily to defer action in a case such as this until the State courts have had an opportunity to hear and decide the federal question. The rule is thus expressed in Ex parte Royall, 117 U. S. 254: "Where a person is in custody under process from a state court of original jurisdiction for an alleged offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the constitution of the United States, the circuit court has a discretion whether it will discharge him upon habeas corpus, in advance of his trial in the court in which he is in

dicted, that discretion, however, to be subordinated to any special circumstances requiring immediate action. When the state court shall have finally acted upon the case, the circuit court has still a discretion whether, under the circumstances then existing, the accused, if convicted, shall be put to his writ of error from the highest court of the state, or whether it will proceed by writ of habeas corpus summarily to determine whether the petitioner is restrained of his liberty in violation of the constitution of the United States." And in Whitten v. Tomlinson, 160 U. S. 231, the court says: "In cases of urgency, such as those of prisoners in custody, by authority of a state, for an act done or omitted to be done in pursuance of a law of the United States, or of an order or process of a court of the United States, or otherwise involving the authority and operations of the general government, or its relations to foreign nations, the courts of the United States should interpose by writ of habeas corpus. . . . . But, except in such peculiar and urgent cases, the courts of the United States will not discharge the prisoner by habeas corpus in advance of a final determination of his case in the courts of the State ; and, even after such final determination in those courts, will generally leave the petitioner to the usual and orderly course of proceeding by writ of error from this court." Other cases are Ex parte Fonda, 117 U. S. 516, In re Duncan, 139 U. S. 449, New York v. Eno, 155 U. S. 89, and Fitts v. Maghee, decided January 3, 1899. The recent decision in Ohio v. Thomas, delivered February 27, 1899, upholds a recognized exception to the rule.

In obedience to these authorities, we are of opinion that the discretion of the circuit court was properly exercised in refusing to discharge the relator from custody, and accordingly the order of that court is now affirmed.

Whereupon the petitioner claimed that having been remitted to the tribunals of the state of Pennsylvania he is now unlawfully detained and the prayer was for a writ of habeas corpus directed to the warden of the Allegheny county prison demanding him forthwith to bring the body of the petitioner before the Superior Court of Pennsylvania at Pittsburg and show cause if any he has why said petitioner should not be discharged and released from said custody.

It appears from the record that the amount in controversy in the common pleas of Allegheny county was in excess of $1,000.

*J. S. Ferguson* and *John Marron*, with them *E. G. Ferguson*, *J. A. Langfitt* and *W. B. Rodgers*, for petitioner.—Without that section it has been repeatedly held that the insolvent laws of a state are suspended whenever a bankrupt law of the United States is in force, where the insolvent laws act on the same subject-matter and the same person as the bankrupt act, and that all proceedings upon such cases commenced under the state laws after that time are null and void: Tua v. Carriere, 117 U. S. 201; Com. v. O'Hara, 6 Phila. 402; Ogden v. Saunders, 12 Wheat. 213; Barber v. Rodgers, 71 Pa. 362.

The bankrupt act of 1898 does not refuse a discharge as against a debt fraudulently contracted, unless that fact is established by judgment.

The fraudulent contracting of a debt would not alone be a bar to a discharge in insolvency, if the insolvent gave up his property. But he could not give up his property, because "from the commencement of proceedings in bankruptcy the estate of the bankrupt is in the custody of the district court of the United States; its jurisdiction is superior and its decrees final and absolute:" Zeigler v. Shomo, 78 Pa. 357.

The great weight of authority is to the effect that the state statutes are suspended whenever they conflict with the operation of the bankrupt act.

From time immemorial the right of a court to inquire into unlawful imprisonment has been as boundless as the instances of such imprisonment. The law has never recognized a limit as to the cases in which the court will or will not inquire into illegal restraint or imprisonment: People v. Bradley, 60 Ill. 390, 401; Ex parte Siebold, 100 U. S. 371; Ex parte Clark, 100 U. S. 399.

If in the fraudulent insolvency case the petitioner had been convicted, undoubtedly his remedy would have been by appeal. But there has been no trial, not even an indictment.

This fact marks the distinction between our case and those that hold that the remedy must be by appeal: 1 Chit. Crim. Law, 120; 2 Tomlin's Law Dict. 63; People v. Bradley, supra.

As to the commitment under the bench warrant, it is perfectly clear that our only remedy is by the present application.

*W. A. Blakeley* and *W. A. Way*, of *Way, Walker & Morris*,

for intervening creditors.—This court has no jurisdiction to release the prisoner in this proceeding. Because, doing so involves the practical reversal of the judgments of the court below in two cases, in neither of which this court has appellate jurisdiction and undertaking to pass upon these judgments through the medium of a habeas corpus proceeding, would only be to do indirectly what the court is without power to do directly.

These two cases are as follows:

(*a*) In the commitment for fraudulent insolvency. This is a commitment issued by and a final order or decree of the court of common pleas, No. 3, of Allegheny county. No indictment has been found nor has the commitment in any way been acted on in the quarter sessions. There may be a true bill found by the grand jury and there may not. The jurisdiction of this court extends to review " all proceedings of any kind in the court of quarter sessions." But this case is not yet in the court of quarter sessions and may never be.

(*b*) In the commitment on the warrants of arrest. This is a commitment issued by a judge of the common pleas court, being a general commitment on thirty warrants of arrest, twenty-five of which were based on debts exceeding in amount $1,000, and the whole thirty, taken together, exceeding in amount $50,000. In the twenty-five exceeding $1,000 an appeal would unquestionably lie to the Supreme Court alone, under the act of 1895, creating the Superior Court and defining its jurisdiction, and this would no doubt be true in this instance in case of an appeal taken upon the single commitment on the whole thirty warrants, as the proceedings were practically consolidated, and this single commitment was made with the full knowledge and assent of defendant.

The original jurisdiction of the Superior Court in issuing writs of habeas corpus will not be exercised where the confinement is by virtue of a judgment of an inferior court, with or without jurisdiction, unless the judgment of the inferior court be one that the Superior Court might have reviewed on appeal.

In Passamore Williamson's Case, 26 Pa. 1 (1855), in discussing whether habeas corpus would lie on the application of one imprisoned by a federal court, Justice BLACK says: " What the law and the constitution have forbidden us to do directly on writ of error, we, of course cannot do indirectly by habeas corpus."

And in the petition of M. S. Quay, 189 Pa. 517, the Supreme Court refused to review the action of the court below, because by so doing they would pass upon questions which if brought before an appellate court at all would eventually be exclusively cognizable by the Superior Court.   Conversely the Superior Court will certainly not assume jurisdiction to pass on the action of the court below in a case that if appealed must necessarily go before another tribunal.

OPINION BY RICE, P. J., May 18, 1899:

This is an application by J. McD. Scott for a writ of habeas corpus.   He complains that he is held in custody by the warden or keeper of the Allegheny county jail under two commitments. One was issued by the Hon. S. A. McCLUNG, a judge of court of common pleas, No. 3, of Allegheny county, after a hearing upon warrants of arrest issued by him under the act of July 12, 1842.   Prior to this time warrants of arrest had been obtained by other creditors, and the relator had given bond to them conditioned to apply for the benefit of the insolvent laws of the state. He did so apply, and after a hearing court of common pleas, No. 3, committed him for trial on the charge of fraudulent insolvency before the court of quarter sessions of Allegheny county. Up to the present time no action has been taken by the latter court in the matter.   Both of these commitments were issued on the same day.

The relator's contention is that the commitments are illegal and void because the statutory provisions under which they were issued have been superseded by the bankrupt law of 1898.

The question is one of the highest importance, but before considering it we are called upon to meet and dispose of the objection raised by the creditors, who were permitted to intervene to oppose the present application, that, as the commitments were issued in civil proceedings in which the amount actually in controversy exceeded $1,000, the Superior Court has not jurisdiction.

The jurisdiction of the Superior Court within the limits prescribed by the Act of June 24, 1895, P. L. 212, is exclusive, not concurrent with that of the Supreme Court.   That is to say, it is not left to the option of the person aggrieved to determine whether the order, decree or judgment of the lower court of

which he complains shall be reviewed by the Supreme Court or the Superior Court. Subject to a conditional right of appeal the jurisdiction of the Supreme Court in certain classes of cases has been transferred to the Superior Court, and all jurisdiction not so transferred remains unimpaired. If it be shown, that one court has jurisdiction of the proceeding to be reviewed the other has not, and this is determinable, not by the form of the application made to the appellate court, but by the subject-matter of the proceeding to be reviewed or by the court in which it was had. Subject to certain exceptions, not necessary to be noticed here, the Superior Court has revisory jurisdiction of "all proceedings of any kind in the court of quarter sessions, or any judge thereof." Manifestly these were not proceedings in the quarter sessions, nor before any judge acting as a judge thereof. The proceedings were in the court of common pleas and before a judge of the common pleas exercising powers conferred upon him as such. But not every proceeding in the common pleas is reviewable by the Superior Court. In general, the proceeding must involve the possession or ownership of real or personal property, or a right, the value of which can be measured in money, and the value of the property or the amount of money actually in controversy must not exceed $1,000. To say that the present proceedings do not involve such a controversy, but simply the personal liberty of the relator is to state his case out of court. Nor is this contention sustained by the authorities. Neither the commitment issued by Judge McClung nor that issued by the court is of the nature of a summary conviction. They are but steps in proceedings to compel the payment of debts fraudulently contracted or payment of which is fraudulently evaded: Gosline v. Place, 32 Pa. 520; Berger v. Smull, 39 Pa. 302; Grieb v. Kuttner, 135 Pa. 281.

As the above cited cases as well as Hart v. Cooper, 129 Pa. 297, Morch v. Raubitschek, 159 Pa. 559, and Shoe Co. v. Saupp, 7 Pa. Superior Ct. 480, show, an appropriate, if not the only appropriate, remedy for the review of the action complained of would be by certiorari, or, as now called, appeal. In the cases cited the certiorari was treated as the principal writ and the writ of habeas corpus, if one issued, as ancillary to it. But whether one or the other be treated as the principal writ the object is the same,

namely to overturn and annul the orders of the court of common pleas and of the judge thereof in proceedings in which the amount in controversy far exceeds the statutory limit of our jurisdiction. If the relator had appealed we suppose no one would have any doubt as to the appellate court that would have jurisdiction. The question arises here because of this provision of the Superior Court act: "The said court shall have no original jurisdiction, except that it may issue writs of habeas corpus." But this does not mean that the court may issue a writ of habeas corpus whenever a petition is presented in which the relator complains that he is unlawfully restrained of his liberty. Surely, we would have no power to issue the writ where the relator was in custody under any order, judgment or decree of the Supreme Court. We refer to this simply as an illustration. Numberless others might be given where the principles enunciated in Com. v. Lecky, 1 W. 66, Williamson's Case, 26 Pa. 1, and Williamson v. Lewis, 39 Pa. 9, would prevent this court from discharging on habeas corpus. The provision under consideration was inserted in the act of 1895 in aid of its revisory jurisdiction and is plainly to be construed with reference thereto. In other words our jurisdiction upon habeas corpus to annul an order, decree or judgment of the lower court is limited by our revisory jurisdiction over them. If an appeal is an appropriate although perhaps not the exclusive remedy, and the Supreme Court would have jurisdiction of the appeal, and we would not, it would seem plain that we could not acquire jurisdiction by issuing a writ of habeas corpus instead of a writ of certiorari. If there were any doubt as to this it is removed by a consideration of the 14th section of the Superior Court act. It reads as follows: "This act does not apply in any respect to any proceeding unless it is hereinbefore made reviewable by the said Superior Court, but all such proceedings shall continue to be reviewable directly by the Supreme Court in the same manner and to the same extent as is now or may hereafter be provided by law." In reading this section special emphasis should be laid on the words "proceeding . . . . hereinbefore made reviewable." Nothing, it will be observed, is left to implication in defining the jurisdiction of the court. Is the proceeding made reviewable by the act, is the question. If it is, the appropriate writ, whether certiorari or habeas corpus may be issued.

If it is not, we cannot make it reviewable in our court by a choice of writs.

There was nothing said or decided in Com. v. Gibbons, 9 Pa. Superior Ct. 527, in conflict with the foregoing conclusions. That was a proceeding for contempt in the court of quarter sessions, consisting of a refusal of a witness to testify in a case involving the right to a public office. As is well shown in the opinion of our Brother SMITH, the contempt proceeding, in character and effect, was wholly independent of the proceeding in which it had its origin, and being in the quarter sessions we unquestionably had jurisdiction over it. So in Lizzie Nuber's Case, 6 Pa. Superior Ct. 420, we issued a writ of habeas corpus and a writ of certiorari to bring up the record, and upon hearing discharged her from custody upon the ground that the sentence and commitment of the quarter sessions under which she was held were illegal and void. Here, however, the proceedings attacked were in the common pleas and by reason of the amount in controversy were not made reviewable in the Superior Court. We are constrained, therefore, to hold that we would have no authority to discharge the relator, even if his contentions as to the effect of the bankrupt law were well founded.

The rule is discharged.