## Commonwealth v. Pomeroy's, Inc.

*James F. Marx*, district attorney, and *Warren K. Hess*, assistant district attorney, for Commonwealth.

*Matten & Matten*, for defendant.

MAYS, J., August 2, 1943.—Complaint was made before D. Francis Mitchell, alderman, by a sector air raid warden charging Pomeroy's, Inc., with a violation of the Air Raid Precautions Act of April 13, 1942, P. L. 37. After hearing, defendant was adjudged guilty and ordered to pay a fine of $10 and costs.

An appeal was duly allowed by this court, and after a hearing had it becomes our duty to determine the guilt or innocence of defendant. Since this is an appeal and not a certiorari, we are not concerned with the regularity of the proceedings before the alderman. As was said in Commonwealth ex rel. v. Baldi, 147 Pa. Superior Ct. 193, 205, "on *appeals* from such conviction the judgment is (1) guilty or (2) not guilty; (1) conviction or (2) acquittal".

In the first instance it must be determined whether or not a corporation can lawfully be prosecuted in a summary conviction proceeding. Unquestionably, "the whole growth of the modern law tends to subject corporations, as nearly as may be, to the same pains and penalties imposed upon individuals": Joplin Mercantile Co. et al. v. United States, 213 Fed. 926, 936, affirmed in 236 U. S. 531.

"It is the settled law that a corporation may be indicted for the failure to perform those public duties which are devolved on it by the principles of the common law, or by the terms of its charter or governing statute": 19 C. J. S. 1079.

The Act of April 13, 1942, supra, is a statute which does impose upon defendant and all of us the performance of a public duty. If there is a violation of the mandates of that act either by an individual or by a corporation, the failure to perform that duty would justify a prosecution under the act.

The facts are that on May 23, 1943, the blue air raid signal was given at 9:20 p.m., and that defendant did not cause the large illuminated sign upon the roof of the building and the lights upon the entire fourth floor of the building on South Sixth Street and on the fourth floor of the building on Cherry Street to be extinguished until 9:33 p.m., which was two minutes before the red signal was given. Does that amount to a violation of the rules and regulations effective February 17, 1943, promulgated by the State Council of Defense under the authority of the Air Raid Precautions Act of April 13, 1942, P. L. 37?

The regulations in question are divided into two parts, namely: "A. Regulations for lighting during a blackout or a practice blackout (blue signal)", and "B. Regulations for lighting during an air raid or a practice air raid (red signal)".

In the regulations to be enforced during a practice blackout, the occupiers of all buildings and residences are required to extinguish or to obscure all lights within or on the building, with certain exceptions relating chiefly to transportation or defense work with which we are not concerned here. In section A(2) it is specifically provided that stores, theatres, etc., shall comply with these regulations "except as hereinafter described", and also that "unattended lighting is prohibited at any time. Lighting shall be attended every night whether there is or is not a period of air raid or a period of blackout."

In section A(11) we find the following provision: "All outdoor illuminated signs of every type and all show window signs shall be totally extinguished during

the blue signal"; and also that "The prohibition of lighting applies to lights of every description—electrical, gas, oil or any other source."

Whether this blackout be actual or practice, we have no hesitation in saying that defendant, in failing to extinguish a large outdoor sign and the lights on one floor of one building for a period of 13 minutes, has failed to comply with these regulations.

Defendant asserts that its two watchmen, who were within the building at the time, did not hear the blue signal and did not receive notice of it until 9:25 p.m. Without deciding whether or not that of itself would be sufficient to excuse defendant provided the lights had been promptly extinguished after 9:25 p.m., nevertheless it is true that the lights both exterior and interior were not extinguished for a period of eight minutes after defendant's agent knew that the signal had been given. This lapse of eight minutes was unreasonably long. Knowing the high speed of airplanes today, we can realize that a large illuminated sign upon the top of this building for a period of eight minutes would act as a direction beacon for oncoming planes many miles away.

The expression "during the blue signal" in regulation A(11) means during the period of the blue signal; in other words, it is the duty of each of us to extinguish all outdoor illuminated signs promptly upon the giving of the blue signal.

It was a practice blackout that was held May 23rd and it is the regulation in section B(11) which raises the real difficulty. This provides: "During a practice air raid, these regulations pertaining to lighting shall be enforced. During a practice blackout the local officials shall warn violators of their failure to comply with these rules and regulations and institute prosecutions only against those who thereupon refuse or fail to coöperate."

What is the reasonable construction of that provision? Does it command that no prosecution should be brought for the first violation, or does it mean that after those in charge of the lights are notified by air raid wardens of the existence of the blackout only those should be deemed guilty who "refuse or fail to coöperate"? We believe the latter construction is the more reasonable.

The Commonwealth contends that, since defendant failed to coöperate for a period of eight minutes after warning, it should be adjudged guilty. Defendant, on the contrary, contends that since its servants and employes, when they learned of the blackout or at least after they were notified by the air raid warden, proceeded to extinguish all the lights, and succeeded in so doing before the red signal went on, it should be adjudged not guilty.

We are thus confronted with the legal question, in the interpretation of Rule III, B (11), General, as to whether or not defendant failed to coöperate. Webster's New International Dictionery (2d ed.) gives to the word "fail", inter alia, this meaning: "To keep or cease from an appointed, proper, expected, or required action." Unquestionably, after notice given, there was a duty imposed upon defendant to act in an appointed, proper, and expected manner. What was the duty imposed? Was it the extinguishing of lights before the lapse of eight minutes after warning, or before the red signal went on?

This case is of such public importance, concerning all of us at a time when our country is at war, that it would be unfortunate if a court of first impression should incorrectly pass upon the law with the result that the Commonwealth could not by appeal have the error corrected. We believe that the legal question here involved should be passed upon by an appellate court.

This course appears especially advisable in this case. The rule affects every one of the millions of residents of the State. All are bound to obey it. Occasions for its enforcement frequently arise. That provision which defines the occasion or occasions upon which local officials should prosecute ought, when a question of construction arises, to be construed by a tribunal possessing State-wide authority so that a resident of Pennsylvania, in whatever section of the State he may happen temporarily to be found during a practice blackout, may be subject to a uniform and certain construction and application of the rule. Otherwise divers interpretations by several of the lower courts may be decreed, to the confusion of the public and the detriment of our civilian defense.

Such a method of procedure is particularly advantageous because the matter, being one of State-wide importance, will probably attract the attention of governmental attorneys who may intervene and file briefs for the purpose of better enabling the court to arrive at a correct interpretation of the rule.

If we were to adopt the contention of defendant and find it not guilty, the Commonwealth would have no right of appeal. In Commonwealth v. Wanamaker, 128 Pa. Superior Ct. 528, it was held (syllabus): "The Commonwealth may not appeal from a judgment of acquittal, or not guilty, entered by the Court of Quarter Sessions, or a judge thereof, following an appeal to that court from a summary conviction before a justice of the peace, alderman or magistrate."

Accordingly, we will follow the mandate in Commonwealth v. Snaman, 131 Pa. Superior Ct. 383, 386, viz: "If there is no serious dispute as to the facts in a criminal case being tried by a judge, on waiver of a jury trial, and the trial judge is of opinion that legal questions are involved which should be passed upon by appellate court, he should adjudge the defendant guilty, which will permit the defendant to bring the questions

before the appellate court on appeal; but, just as in trials by jury, a verdict of not guilty or acquittal is final and no appeal by the Commonwealth lies, unless specially authorized by statute, which is wanting here."

This, we believe, applies with like force and effect to a summary conviction where, as we have pointed out, if defendant were found not guilty, no appeal would lie on the part of the Commonwealth.

And, now, to wit, August 2, 1943, defendant is adjudged guilty.