Commonwealth ex rel. Sullivan *v.* Ashe, Warden.

Argued November 23, 1936.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Bernard T. Foley,* for petitioner.

*Charles J. Margiotti,* Attorney General, and *Grover C. Ladner* and *Adrian Bonnelly,* Deputy Attorneys Gen-

eral, *Oliver C. Cohen,* Assistant Deputy Attorney General, *Mortimer E. Graham,* District Attorney, and *Burton R. Laub,* First Assistant District Attorney, for Commonwealth, were not heard.

OPINION BY MR. JUSTICE STERN, January 11, 1937:

This is a petition for a writ of habeas corpus on which the court, exercising its original jurisdiction, has granted a rule to show cause. The petitioner, Elmer Sullivan, in 1929 pleaded guilty to breaking and entering with intent to commit a felony, and was sentenced to the Western Penitentiary for a term of from three to six years. He was transferred to Rockview, from where he escaped in 1931. Being apprehended, he was indicted for breaking out of prison, pleaded guilty, and was sentenced to the penitentiary under the Act of March 31, 1860, P. L. 382, section 3, for a term of from three to six years to be computed from the expiration of his original sentence.

The present writ is based upon the alleged unconstitutionality of the statute under which the sentence was imposed. The act provides, inter alia, that a prisoner breaking penitentiary or jail is guilty of a misdemeanor and upon conviction shall be sentenced to undergo an imprisonment to commence from the expiration of, and for a period of time not exceeding, the original sentence by virtue of which he had been imprisoned. The criticism leveled at the act is that for the offense of breaking prison unequal sentences are thus provided, depending upon what, it is contended, is the merely adventitious circumstance of the duration of a former sentence of the offender. It is claimed that this is a denial of the equal protection of the laws, and therefore a violation of section 1 of the fourteenth amendment of the constitution of the United States. It is pointed out that in this very case the petitioner, Sullivan, made his escape from Rockview simultaneously with a fellow prisoner, Clarence McCann. The two were apprehended at the same time

and sentenced on the same day, but McCann received a sentence of only one to two years because that was the extent of his original sentence.

The constitutional provision here invoked has been the subject of such a wealth of interpretation by the federal Supreme Court that, at least as far as general underlying principles are concerned, there can be no room for misconception. The fourteenth amendment does not impose such a technical and legalistic uniformity upon all persons and human transactions as to preclude wise differentiations. Classifications are permissible when founded upon reason and logic; they are prohibited only when arbitrary and capricious. As was said by the present Chief Justice of the Supreme Court of the United States in *Graham v. State of West Virginia,* 224 U. S. 616, 630, quoting from an earlier case: "The Fourteenth Amendment is not to be considered 'as introducing a factitious equality without regard to practical differences that are best met by corresponding differences of treatment.' "

The real question is whether a statute adopts an unreasonable classification when, in providing for the sentencing of persons who commit identical crimes, it authorizes the imposition of a severer sentence upon one who had previously offended more grievously than another. The answer would seem to be obvious. Probably every day, in every criminal court in the country, judges impose unequal sentences upon defendants who have committed the same offense but where their former records of crime are different. If judges are properly permitted to exercise such discretion, certainly the legislature by a general statute can enact into law the expression of a similar policy.

The classification effected by the act here under attack is justified. The longer the sentence which is being served by a prisoner, the greater his temptation to seek to escape, and the greater therefore the penalty which must be imposed in order to act as an effective deterrent.

Furthermore, the breaking from prison of one who is serving a long sentence, and therefore presumably has been guilty of a serious crime, involves a greater potential danger to society than the escape of a petty offender. Against a greater menace society is warranted in seeking a larger measure of protection.

The time has long passed in the development of penology when it was considered that a given punishment should automatically attach to a given crime. Penology is not, and probably never can become, an exact science. Sentencing criminals is a sociological problem, and as such demands a wide range of adaptation to social needs in the treatment of individual cases.

The most reliable guide to a judicial solution of the legal problem here presented is that offered by the decisions of the courts sustaining habitual criminal acts. In *Graham v. State of West Virginia*, 224 U. S. 616, 623, upholding such a statute, the Supreme Court of the United States said : "The propriety of inflicting severer punishment upon old offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted. Statutes providing for such increased punishment were enacted in Virginia and New York as early as 1796, and in Massachusetts in 1804; and there have been numerous acts of similar import in many States. This legislation has uniformly been sustained in the state courts, . . . and it has been held by this court not to be repugnant to the Federal Constitution." It was also said (p. 630) that "The fact of such [prior] sentence, indicating the gravity of the offense, affords a reasonable basis for classification."

In *Moore v. Missouri*, 159 U. S. 673, such a statute was attacked on the ground that it prescribed different punishment for different persons for committing the same offense. The Supreme Court pointed out that the pun-

ishment for the later offense was rendered more severe only in consequence of the defendant's previous conduct. The court said (p. 677): "Nor can we perceive that plaintiff in error was denied the equal protection of the laws, for every other person in like case with him, convicted as he had been, would be subjected to the like punishment. The Fourteenth Amendment means 'that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances': *Missouri v. Lewis,* 101 U. S. 22. The general doctrine is that that amendment, in respect of the administration of criminal justice, requires that no different degree or higher punishment shall be imposed on one than is imposed on all for like offenses; but it was not designed to interfere with the power of the State to protect the lives, liberty, or property of its citizens, nor with the exercise of that power in the adjudication of the courts of the State in administering the process provided by the law of the State: *In re Converse,* 137 U. S. 624. And the State may undoubtedly provide that persons who have been before convicted of crime may suffer severer punishment for subsequent offenses than for a first offense against the law, and that a different punishment for the same offense may be inflicted under particular circumstances, provided it is dealt out to all alike who are similarly situated: *Pace v. Alabama,* 106 U. S. 583; *Leeper v. Texas,* 139 U. S. 462."

An habitual criminal statute of Massachusetts was held constitutional in *McDonald v. Massachusetts,* 180 U. S. 311, of Wisconsin in *Ingalls v. State of Wisconsin,* 48 Wis. 647, 4 N. W. 785; of New York in *People v. Sickles,* 156 N. Y. 541, and of California in *People v. Coleman,* 145 Cal. 609, 79 Pac. 283. In the last named case it was said: "Penal laws are not so much for the punishment of the offender as for the protection of society, and experience has shown that the persistent and hardened offender is more dangerous to society than a

person who has committed but one offense, and that a severer punishment is demanded in such case, the better to protect society."

Even where there are several participants in the commission of a single crime, it is not uncommon for a judge to impose unequal sentences based upon variations in age, sex, health, likelihood of reform, different degrees of initiative in the perpetration of the offense, and similar conditions.

In the present case the same crime, that of breaking prison, was committed by both Sullivan and McCann, but at the time Sullivan was serving a three to six year sentence whereas McCann was serving from one to two years; from this it must be presumed that Sullivan had committed either a graver crime than McCann or a similar offense under circumstances of greater culpability. The law was justified, therefore, when imposing sentence for the second crime, in treating Sullivan's offense more severely than that of McCann.

We hold that the Act of March 31, 1860, P. L. 382, section 3, does not deny the equal protection of the laws within the meaning of the fourteenth amendment. We cannot approve the conclusions to the contrary reached in *State v. Lewin,* 53 Kans. 679, 37 Pac. 168, *In re Mallon,* 16 Idaho 737, 102 Pac. 374, and *State v. Johnsey,* 46 Okla. Criminal Appeals 233, 287 Pac. 729.

Petitioner contends that inadvertently or ignorantly he pleaded guilty to the charge of breaking prison when really guilty of nothing more than an escape, which, he argues, is a lesser crime. Whatever the fact in that regard may be, redress does not lie within the scope of a habeas corpus; such a writ cannot be made the substitute for an appeal: *Commonwealth v. Reifsteck,* 271 Pa. 441; *Halderman's Petition,* 276 Pa. 1; *Commonwealth v. Curry,* 285 Pa. 289.

The rule is discharged.