Opinion by
 

 Cunningham, J.,
 

 On this appeal, the jurisdiction of the Municipal Court of Philadelphia to issue a writ of habeas corpus and conduct proceedings thereunder is challenged by the Commonwealth, the appellant herein. The District Attorney contends the Municipal Court exceeded its jurisdiction in compelling, by a writ of habeas corpus, the production before it of William Burton, then confined in the county prison under a commitment based
 
 *195
 
 upon Ms summary conviction before a magistrate, of a criminal offense, and, after a hearing, discharging him from custody.
 

 In approaching a solution of the question whether the action of the Municipal Court now complained of was a legitimate exercise of the jurisdiction conferred upon it by the legislature, as asserted by the relator, or an usurpation of the powers of the Quarter Sessions Court of Philadelphia County, as contended by the Commonwealth, it is essential that a clear understanding be had of the nature and extent of the jurisdiction exercised in this case by the Municipal Court.
 

 These pertinent facts appear upon the record: On November 30, 1940, at 11:45 p.m., detectives of the City of Philadelphia, answering a complaint, proceeded to the dwelling house at 508 South Sartain Street. On arriving, they saw a number of men entering and leaving the house and heard noises emanating from it. When they entered they found Burton, the relator, and eighteen other men, in a room on the second floor engaged in a game of dice, commonly described as “shooting crap.” The officers arrested the players and seized from the floor several dollars and two pairs of dice. The prisoners were taken before Magistrate John J. O’Malley and severally charged with the criminal offense of disorderly conduct, as defined in Section 406 of the Penal Code of June 24, 1939, P. L. 872, 18 PS §4406, which provides for a summary trial before a magistrate, and, upon conviction, the imposition of a fine not exceeding $10, or imprisonment not exceeding thirty days, in default of payment thereof. At the trial before the magistrate on December 4, 1940, each defendant was found guilty and sentenced to pay a fine of $10 and costs, or undergo imprisonment in the Philadelphia County Prison for thirty days. Fifteen of the defendants, including Burton, were duly committed, in default of payment.
 

 Upon the same date one Claire A. Bennett presented
 
 *196
 
 a petition to the Municipal Court on their behalf ayerring they were unjustly deprived of their liberty by the Superintendent of Philadelphia County Prisons, and praying that a writ of habeas corpus be issued “according to the Act of Assembly in such case made and provided.” A single writ, naming all fifteen of the prisoners as relators, was prepared upon a form, referring in its caption to “Act of Assembly, One Thousand Seven Hundred and Eighty-Five,” and issued forthwith, returnable December 6,1940. It bore the endorsement, “Allowed by Honorable Adrian Bonnelly.” In the body of the writ the Superintendent of Philadelphia County Prisons was commanded to produce the fifteen relators, together with the cause of their detention, “before the Honorable Judges of our Court of Quarter Sessions of the Peace of the City and County of Philadelphia at the County Court House, City Hall,” — an inadvertence apparently due to the fact that the form had been prepared for that court.
 

 On December 5, 1940, the District Attorney of Philadelphia County filed his motion in writing to dismiss the writ “for the reason that the Municipal Court has no right or authority to issue” the same.
 

 To the writ the deputy warden of the prison returned on December 6th that seven of the relators had been discharged from custody by specified magistrates and that the remaining eight, including Burton, were present, together with the respective commitments of Magistrate O’Malley, under which they were in custody.
 

 The matter then came on for hearing before Bonnelly, J. The Commonwealth’s motion to dismiss the writ was renewed and argued, but the presiding judge directed counsel for the relators to proceed with his case. The Assistant District Attorney, assigned to the case, objected to the taking of any testimony upon the ground that the Municipal Court had no “right to issue the writ” and therefore no authority “to hear any testimony in connection with it.” This objection was over
 
 *197
 
 ruled and an exception granted the Commonwealth; its representative took no part in the subsequent proceedings.
 

 The sitting judge, thereupon entered upon a hearing de novo of the merits of the case. The officers testified to the circumstances under which the relators were arrested and it was developed in the course of the hearing that seven of the eight prisoners before the court had previous criminal records against them but that 'there was no record of a previous arrest of Burton.
 

 In disposing of the matter, Judge Bonnelly made a distinction between the cases of those who had such prior records and that of Burton, stating in the opinion filed in support of his action: “Of the eight relators, only William Burton had no prior criminal record. The other seven had a number of convictions charged up to them. After reviewing the testimony we reach the conclusion that there was insufficient evidence to warrant the conviction of William Burton. As to him the petition for habeas corpus is sustained and he is, therefore, discharged. As to the other seven relators, the petition for habeas corpus is dismissed and such relators remanded.”
 

 The present appeal is by the Commonwealth from the order discharging Burton from custody.
 

 It is clear, from the foregoing review of the record, that the Municipal Court has undertaken, under the guise of an habeas corpus proceeding, to exercise
 
 appellate
 
 and
 
 revisory
 
 jurisdiction over eight final judgments duly entered in criminal cases by another court clothed by the legislature with full power1 to entertain, try and finally adjudicate (subject only to a conditional right of appeal to the Quarter Sessions), the charge preferred against each of the relators.
 

 The issue here involved between the Commonwealth and the court below will be clarified by keeping in mind that the relators were not deprived of their liberty by any private restraint, nor had they been committed for
 
 *198
 
 trial upon a bailable criminal offense; they were serving the lawful sentences imposed upon them by a court of competent jurisdiction as the result of their
 
 conviction
 
 in that court of a criminal offense.
 

 In order that the fundamental and important question involved upon this appeal may be squarely decided, we lay aside the inquiry whether a separate writ should not have been issued for each prisoner, (See
 
 Ferree et al. v. Douglas,
 
 145 Pa. Superior Ct. 447, 21 A. 2d 472.) and disregard the technical defects apparent upon the face of the writ as issued.
 

 As above indicated, the writ purports to have been issued under the Act of February 18, 1785, 2 Sm. L. 275, 12 PS §1871, et seq. In fact, it was not and could not have been issued under that statute. That act applies only to bailable offenses or private restraints
 
 (Williamson v. Lewis,
 
 39 Pa. 9, 26) and the writ is issuable only by a Justice of the Supreme Court or a common pleas judge. The writ with which we are here concerned was, in effect, the familiar common law writ of habeas corpus ad subjiciendum. It is the writ by which a superior court undertakes to examine the legality of an imprisonment imposed by an inferior court: See
 
 Williamson v. Lewis,
 
 supra, page 27;
 
 Mc-Nally v. Hill, Warden,
 
 293 U. S. 131, 136; 29 C. J. 6, 7. Unquestionably this is the only form of common law writ which could be used to inquire into the validity of the magistrate’s commitment.
 

 The Commonwealth vigorously contends that the Municipal Court had no jurisdiction to entertain the petition on behalf of Burton, issue the writ, and discharge him from custody. We agree with its contention.
 

 That court is a purely
 
 statutory
 
 court of
 
 original
 
 jurisdiction in criminal cases. As to them, it has expressly been given a limited trial jurisdiction, but it has not been suggested by anyone that the legislature ever directly conferred upon it any revisory powers over the disposition made by any other court of a criminal
 
 *199
 
 case, or authorized it to issue writs of habeas corpus. As it has been given exclusive jurisdiction “in all proceedings for the custody of children,” it has the implied power'to issue appropriate writs of habeas corpus in such cases. See
 
 Com. ex rel. Mees v. Mathieu II.,
 
 107 Pa. Superior Ct. 261, 163 A. 109.
 

 Granting the lack of any express power to issue writs of habeas corpus in criminal cases, the theory by which the court below endeavors, in the opinion filed in its behalf by Judge Bonnelly, to sustain its right to issue the present writ is that, as the creating act of July 12* 1913, P. L. 711, and its amendments, 17 PS §681, et seq., provides, in Section 16, 17 PS §699, that it shall be a “court of record,” and by Section 11, 17 PS §694, enacts that it
 
 “shall have jurisdiction in all criminal actions
 
 and suits for penalties, except that it shall not have jurisdiction in the trial of indictments for arson, burglary, murder, voluntary manslaughter, treason, or misprision of treason, or for violation or conspiracy to violate the election or registration laws of this Commonwealth, or for embezzlement by any public officer, or any offense involving breach of official duties by any public officer,” (Italics supplied), .the application of the familiar principle that every court of record has an inherent power to do all things that are reasonably necessary for the administration of justice
 
 within the scope of its jurisdiction
 
 justified the action here complained of.
 

 The fundamental difficulty with this theory is that it ignores the significance of the phrase “within the scope of its jurisdiction.” The seed out of which has grown the confusion and erroneous procedure disclosed by this record is the failure of the court below to
 
 distinguish
 
 between the “scope” of the
 
 jurisdiction
 
 of statutory, as contrasted with common law, courts, and of courts of original jurisdiction as compared with those having appellate and revisory powers.
 

 Even appellate courts created by statute must keep
 
 *200
 
 within the strict limits of their jurisdiction as prescribed by the legislature. By way of illustration, it may be noted that our court, a statutory appellate tribunal, would not have had jurisdiction in habeas corpus proceedings (except as ancillary to its appellate jurisdiction) if the legislature had not expressly conferred that jurisdiction upon it. It is provided by Section 7 of the Act of June 24, 1895, P. L. 212, as amended by Section 3 of the Act of May 5, 1899, P. L. 248, 17 PS §181, that we shall have no
 
 original
 
 juris: diction except “to issue writs of habeas corpus.” See Com.
 
 v. Gibbons,
 
 9 Pa. Superior Ct. 527, (affirmed 200 Pa. 430);
 
 Whitney v. Dick,
 
 202 U. S. 132. But even under this broad grant of power we have consistently declined to issue writs of habeas corpus in any case in which we do not have exclusive appellate jurisdiction. In
 
 Scott’s Petition,
 
 10 Pa. Superior Ct. 286, a case which originated in the Common Pleas of Allegheny County and involved a charge of fraudulent insolvency, we declined to issue the writ because the amount in controversy exceeded $1,000, the then limit of our appellate jurisdiction in civil cases.
 

 The title of the Act of 1913, supra, creating the Municipal Court reads: “An Act, Establishing a court for the county of Philadelphia;
 
 prescribing its jurisdiction and powers;
 
 providing for the service of its writs, process, or warrants by the proper officers of the county or city of Philadelphia; regulating the pro: cedure therein, and appeals therefrom, and providing for the expenses thereof.” (Italics supplied.)
 

 As between courts created, as was the Municipal Court and this court, by statutes, and those possessing common law powers, the fundamental distinction in jurisdiction was clearly stated by Maeshall, Ch. J., in
 
 Ex parte Bollman,
 
 4 Cranch 75, 8 U. S. 74, 93. One question involved in that case was whether the Supreme Court of the United States had power to issue a writ of habeas corpus to compel the production of a pris
 
 *201
 
 oner, then in the custody of the marshal of the District of Columbia, who had been committed by the Circuit Court of that district on a charge of treason. In the course of his opinion sustaining such right the Chief Justice said: “Courts which originate in the common law possess a jurisdiction which must be regulated by the common law......; but courts which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction.” So in this case, the basic jurisdictional boundaries of the Municipal Court are those and only those prescribed by legislative mandate. Resort cannot be made to the common law to enlarge them.
 

 The above quoted phrase from Section 11 of the Act of 1913, namely, “shall have jurisdiction in all criminal actions,” upon which the whole argument by and in behalf of the court below is based, clearly means, when the act is considered as a whole, that the Municipal Court shall have original, i. e., trial, jurisdiction in all criminal actions, except the serious criminal offenses expressly excluded therein. Moreover, as respects those indictable criminal offenses over which the Municipal Court is given trial jurisdiction, it may, under Section 13, 17 PS §696, try only indictments which have been found by a Grand Jury in the Quarter Sessions and which the District Attorney has elected to try in the Municipal Court:
 
 Com. v. Weiner,
 
 67 Pa. Superior Ct. 558, and
 
 Com. v. Salot,
 
 74 Pa. Superior Ct. 100.
 

 Again, it was also definitely decided in
 
 Ex parte Bollman,
 
 supra, that a court in awarding and disposing of a common law writ of habeas corpus ad subjiciendum is exercising appellate, as distinguished from original, jurisdiction. At page 100, the Chief Justice said:
 

 “If the act of congress gives this court the power to award a writ of habeas corpus in the present case, it remains to inquire whether that act be compatible with
 
 *202
 
 the constitution. In the mandamus case
 
 (Marbury v. Madison,
 
 1 Cr. 175) it was decided that this court would not exercise original jurisdiction,, except so far as that jurisdiction was given by the constitution. But so far as that case has distinguished between original and appellate jurisdiction, that which the court is how asked to exercise is clearly appellate. It is the revision of a decision of an inferior court, by which a citizen has been committed to jail.”
 

 Moreover, as appears from the second paragraph of the syllabus in
 
 Passmore Williamson’s Case,
 
 26 Pa. 9, our Supreme Court has held: “Upon a habeas corpus the judgment even of a subordinate state court having jurisdiction of the subject-matter, cannot be reviewed in [the appellate] court; but such judgment, however érroneous, must be taken as legal and valid until reversed on writ of error, or appeal.”
 

 But even if the Municipal Court could by any stretch of the imagination be regarded as having power to
 
 award
 
 the present writ, its action in proceeding to a hearing, de novo, upon the merits of the judgmeut entered by the magistrate was a clear violation of the fundamental rule of law that habeas corpus cannot be used as a substitute for an appeal.
 

 The distinction between habeas corpus and appeal has been passed upon in numerous cases and may now be regarded as firmly established. In
 
 Com. ex rel. Aikens v. Ashe,
 
 137 Pa. Superior Ct. 392, 393-4, 9 A. 2d 201, we stated: “The writ of habeas corpus cannot be used as a substitute for an appeal:
 
 Com. ex rel. Sullivan v. Ashe, Warden,
 
 325 Pa. 305, 310, 188 A. 841;
 
 Com. ex rel.. Ross v. Egan,
 
 281 Pa. 251, 253, 126 A. 488;
 
 Com. ex rel. Greevy v. Reifsteck,
 
 271 Pa. 441, 446, 115 A. 130;
 
 Com. ex rel; Contardi v. Smithy
 
 134 Pa. Superior Ct. 31, 3 A. 2d 1005. Alleged errors of the court on the trial of the case in the admission or rejection of evidence,' or in the submission of the case to the jury, must be raised by appeal:
 
 Com. v. Curry,
 
 285 Pa, 289,
 
 *203
 
 132 A. 370;
 
 Halderman’s Petition,
 
 276 Pa. 1, 119 A. 735;
 
 Com. ex rel. Lewis v. Ashe,
 
 335 Pa. 575, 7 A. 2d 296. It is not the province of a judge, or court, in habeas corpus proceedings, to retry the case, as a judge sitting without a jury, on- the evidence made a part of the
 
 record on appeal
 
 by the Act of April 18, 1919; P. L. 72. See
 
 Com. ex. rel. Wendell v. Smith,
 
 123 Pa. Superior Ct. 113,, 186 A. 810.”
 

 The basic and fundamental errors which are subject to correction on habeas corpus are fully discussed in
 
 Com. ex rel., Schultz v. Smith, Warden,
 
 139 Pa. Superior Ct. 357, 367-8, 11 A. 2d 656, by President Judge Keller and do not require repetition here. See also
 
 Com. ex rel. Penland v. Ashe, Warden,
 
 341 Pa. 337, 19 A. 2d 464. Under the principle of these cases, it is axiomatic that questions relating to the sufficiency of the evidence to sustain a conviction cannot be raised by habeas corpus but are reviewable only on appeal. Yet, that is exactly what the court below assumed power to do. ,
 

 In his opinion, Judge Bonnelly cites as his authority for disposing of the case upon its merits the recent Act of July 1, 1937, P. B. 2664, 12 PS §1892, et seq., and argues that this statute has abrogated the rule to which we have just referred. An. examination of the title and body of the act demonstrates that it has no ápplication whatever to the present case. In the first place, it applies only to writs of habeas corpus issued by a court; or judge thereof, clothed with authority to do so; it is further limited in its application to “an examination by the judge [lawfully issuing the writ] into all the proceedings held and evidence produced before a judge; magistrate, justice of the peace, or other officer,
 
 sitting as a committing judge or
 
 magistrate.____,(Italics supplied.)
 

 In this case, Magistrate O’Malley was not sitting as á committing magistrate, but as a magistrate clothed with authority to try the relators and, upon conviction
 
 *204
 
 by him, to impose the sentence prescribed by the section of the Penal Code which they were charged with having violated.
 

 Lest it be mistakenly assumed that Burton and the other relators were without a remedy by which to reverse the judgment of the magistrate, through showing it was based upon insufficient competent testimony, it may be advisable to point out that under our Constitution, and legislative enactments thereunder, a plain, adequate and complete, remedy has been provided for any defendant improperly convicted by a magistrate in a summary proceeding before him.
 

 As respects summary convictions the Constitution provides, Article 5, Section 14, Constitution PS, p. 332: “In all cases of summary conviction in this Commonwealth, or of judgment in suit for a penalty before a magistrate, or court not of record, either party may appeal to such court of record as may be prescribed by law upon allowance of the appellate court or judge thereof upon cause shown.”
 

 In
 
 Com. v. Benson et al.,
 
 94 Pa. Superior Ct. 10, we had occasion to consider the remedies afforded a defendant summarily convicted of a criminal offense by a magistrate. We there said:
 

 “The practice relating to (1) appeals from summary convictions, and (2) their review on certiorari is well settled. If it is desired to attack only the regularity of the proceedings before the justice or alderman, this is done by a writ of certiorari to the Court of
 
 Common Pleas,
 
 and the assignment of the alleged errors relied on; in which event the judgment of the inferior magistrate is sustained or set aside, depending on whether the proceedings objected to are found to be legal and regular or not, and whether they sustain the conviction or not. But if an appeal is asked for, this is directed to the Court of
 
 Quarter Sessions
 
 and, if allowed, the case is heard de novo before a judge of that court. In such case, the Court of Quarter Sessions does not sus
 
 *205
 
 tain or reverse the judgment of the inferior magistrate —it does not review such judgment or the matters alleged as ground for appeal — it finds the defendant either guilty or not guilty — it either convicts or acquits him. ...... The judgment on writs of
 
 certiorari
 
 from a summary conviction before an alderman or justice of the peace is to (1) sustain or (2) set aside the judgment ; on
 
 appeals
 
 from such conviction the judgment is (1) guilty or (2) not guilty; (1) conviction or (2) acquittal.”
 

 As has been shown, relators were charged with the criminal offense of disorderly conduct as defined by the Act of June 24, 1939, P. L. 872, Sec. 406, 18 PS §4406. This offense is punishable in a summary proceeding. Jurisdiction over such proceedings is conferred by statute upon “any magistrate, alderman, or justice of the peace within any county in which any such offense is committed, to hear and dispose of a prosecution and impose the penalties provided therefor, subject to the right of appeal as in other cases.” Act of April 26, 1929, P. L. 824, Sec. 1, 42 PS §391. The jurisdiction of the magistrates of the City and County of Philadelphia is found in the Act of May 10,1927, P. L. 866, Section 20, 42 PS §1060, of which, inter alia, provides: “In all cases of summary conviction before said magistrates, either party may appeal to the court of quarter sessions of said county, upon the allowance of any judge thereof, upon cause shown.”
 

 We have searched in vain for any statutory authority permitting the Municipal Court to exercise any revisory jurisdiction over summary convictions obtained by the Commonwealth before a magistrate of the City of Philadelphia. It is significant that our Constitution and legislative enactments have expressly conferred such power upon other courts. Jurisdiction to issue writs of habeas corpus is conferred upon our Supreme Court by Article Y, Sec. 3, of the Constitution and by the Act of June 16, 1836, P. L. 784, Sec. 7, 17 PS §48; upon
 
 *206
 
 this Court by the Act of June 24, 1895, P. L. 212, Sec. 7, 17 PS §181; and upon the Court of Quarter Sessions of Philadelphia County by the Act of April 4, 1837, P. L. 377, Sec. 2, 17 PS §502. In addition, the Habeas Corpus Act of 1785, 12 PS §1871, et seq., empowers the Judges of the Supreme 'Court and the Common Pleas Courts to issue writs of habeas corpus under that statute. In the light of this legislation, it is not unreasonable to suppose that the legislature would have made some mention of habeas corpus, in creating the Municipal Court, if it had intended to permit that Court to use such process.
 

 The administration of justice would not be promoted by ignoring the distinctions between courts of original jurisdiction and those having appellate and revisory powers, or by permitting a statutory court of limited original jurisdiction to usurp the authority expressly vested in other courts.
 

 In our opinion the court below was wholly Avithout jurisdiction to issue the writ of habeas corpus involved in this ease. It follows that all the proceedings had thereunder were void. The assignments of error filed by the Commonwealth are severally sustained.
 

 The order of December 6, 1940, discharging the relator, William Burton,, from custody, is vacated, and it is ordered and directed that appropriate proceedings be taken to remand him to the custody of the Superintendent of Philadelphia County prisons until he shall have paid the fine imposed upon him or served that portion of the sentence pronounced against him by the magistrate which had not been served at the date of his discharge.