390 A.2d 803

**COMMONWEALTH of Pennsylvania**

v.

**Park Irvine BUTCH, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1976.

Decided July 12, 1978.

244

William J. Rundorff, Sharon, for appellant.

Phillip L. Wein, District Attorney, Clarion, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The six Judges who decided this case being equally divided as to the Judgment of Sentence, the Judgment of Sentence is affirmed.

PRICE, J., files an opinion in support of affirmance, in which JACOBS, President Judge, and VAN der VOORT, J., join.

CERCONE, J., files a concurring and dissenting opinion, in which HOFFMAN and SPAETH, JJ., join.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

PRICE, Judge:

## OPINION IN SUPPORT OF AFFIRMANCE.

Following a jury trial on May 29, 1975, appellant was convicted of delivering marijuana in violation of The Controlled Substance, Drug, Device and Cosmetic Act.[1] Motions for a new trial and in arrest of judgment were filed and

1. Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(30) [35 P.S. § 780–113(a)(30)].

denied. On March 5, 1976, appellant was sentenced to pay the costs of prosecution and a fine of $350.00 and to serve not less than 5½ months nor more than 23 months in the Clarion County Jail. Five alleged points of error are raised in this appeal. After examining the record, we find appellant's contentions unpersuasive and would affirm the judgment of sentence.

Appellant first claims that the court below erred in denying his motion to suppress evidence. A review of the facts leading to the instant prosecution is necessary for proper consideration of this issue. On October 4, 1974, Jerry DeMarco sold a "lid" of marijuana to Bruce Burke. Unknown to DeMarco, Burke was acting as an agent for Corporal Lees of the Pennsylvania State Police. Burke took the marijuana to Corporal Lees, who subsequently interviewed and arrested DeMarco. DeMarco informed Corporal Lees that he had obtained the marijuana from appellant and had also turned over the money from the sale to appellant. On December 19, 1974, Corporal Lees telephoned appellant and told him that he "was interested in talking to him about a sale of marijuana that occurred at Forest Manor, Clarion Borough, Clarion County." (NTS 15). At Corporal Lees' request, appellant came to the State Police Barracks to discuss the matter. Lees informed appellant that formal charges were going to be filed against him, although "[w]e actually didn't discuss that specific charge that was facing him at the time, in the sense of whether he was guilty or not guilty of that particular violation." (NTS 8).

At this time, Corporal Lees gave appellant his *Miranda* warnings and appellant signed a waiver form. Lee then informed appellant that "I was interested in other sources of drugs that as on past occasions I was always interested in going further down the line to get major dealers who were bringing drugs into the area and I was interested in anybody that could be instrumental in getting us to those sources." (NTS 8). The two discussed the possibility of appellant arranging a "deal" or a buy and appellant asked "if it were possible to hold off on the charge and he indicated he could

take me to much bigger sources." (NTS 8). Appellant's ostensible desire to cooperate was rooted in self-interest. He hoped to have the charge against him reduced from the felony of delivery of marijuana to the misdemeanor of possession of a small amount. The nature of appellant's expectation in this regard is a matter of some dispute. Corporal Lees testified that he told appellant that such a reduction in charges had occurred in some prior cases where defendants had cooperated. According to Lees, however, he emphasized that he could not guarantee the ultimate disposition of appellant's case. Appellant made no confessions or statements at this first meeting, but he indicated a willingness to cooperate and an intent to set up a big "deal" as soon as possible. He was to contact Corporal Lees upon receiving any information or making arrangements for a buy.

Shortly after the December 19 meeting, appellant left the college campus to spend Christmas vacation at his home. Sometime between December 20, 1974, and January 15, 1975, Corporal Lees called appellant at home to ascertain if there had been any developments. Appellant had nothing to report. At some point between January 15 and February 5, 1975, Corporal Lees once again telephoned appellant, this time at his college dormitory, to inquire why appellant had not contacted him about the promised buy. Appellant stated that he would try to arrange something for that weekend, but, as before, no results were forthcoming.

On February 5, 1975, Corporal Lees called appellant at his dormitory informing him that formal charges had been lodged against him and instructing him to appear that day at the district magistrate's office in Clarion for a preliminary arraignment. Lees and appellant met in the hall outside the magistrate's office. The officer again gave appellant the *Miranda* warnings and read the arrest warrant to him. Lees asked appellant if he still wanted to make a "deal" (a purchase of drugs), and appellant replied that he was still interested. The arraignment followed, and the magistrate once more informed appellant of his constitutional rights, read the arrest warrant to him and informed him

of his right to a preliminary hearing. Appellant signed a written waiver of a preliminary hearing, but the waiver was subsequently permitted to be withdrawn and a preliminary hearing was held on February 20, 1975.

After the arraignment, Corporal Lees took appellant to the state police barracks at Shippenville where he was fingerprinted and photographed. Another conversation in regard to a possible buy ensued, which Corporal Lees, at trial, described as follows:

Question: At that time did you ask the Defendant about the source of drugs involved in this case?

Answer: Yes, sir. He indicated that things were dry and meaning that there was a chance of something coming up, but things were dry right at the time and he just couldn't make contact and I indicated that things might be slow on drugs or anything at the time but I said, 'We do have the stuff that you allegedly sold in this particular case.' And I said, 'We can make a case from that. Where did that come from?' And he indicated that stuff he got from a William Rogers at Penn State and I asked about trying to get that source of drugs, so he would be able to find out where that source of drugs came from and he indicated—we discussed about him taking an undercover agent or somebody up to Penn State and making a buy from William Rogers. He indicated he had gone up and that is where he got the stuff from he sold in this case.

Question: How definite was he that that was the same marijuana he had sold in this case.

Answer: That definite. Just that he said that is where it came from. (NT 57).

Appellant urges that the court below erred in refusing to suppress any testimony in regard to the above-mentioned statements because they were involuntary. It is asserted that appellant made the statements in reliance upon Corporal Lees' representations that if he [appellant] cooperated the charge against him would be reduced to a misdemeanor. Appellant argues that, under these circumstances, no effec-

tive waiver of his rights could have occurred. The record reveals, and appellant admits, that his *Miranda* rights were fully explained to him on at least three occasions prior to the conversation involved here. During his first interview with Lees appellant signed a written waiver form, and he was twice given his rights orally earlier in the day of the fatal dialogue. Appellant contends that Corporal Lees duped or deceived him into making admissions. Corporal Lees, on the other hand, testified that he did not promise appellant reduced charges for cooperation, but only stated that in some past cases where defendants had aided police investigation a reduction in charges had resulted. Lees told appellant that, should he cooperate, the fact of his good conduct would be presented in court and that such conduct had been considered favorably in the past. According to his testimony, however, Lees made no affirmative representation or guarantee as the final outcome of appellant's case.

██ It is well established that in a suppression hearing the burden is on the Commonwealth to establish the admissibility of the challenged evidence, here the voluntariness of statements, by a preponderance of the credible evidence, *Commonwealth v. Ravenell*, 448 Pa. 162, 292 A.2d 365 (1972); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). Appellant does not contend that he did not understand the oral *Miranda* warnings that were given to him, nor does he allege that he was coerced or misled into signing the written waiver. Appellant does assert, however, that there was a "Clarion County Program" for defendants in drug cases whereby those who aided the police were assured of being charged with only the misdemeanor offense of possession. Appellant further maintains that he was relying on Corporal Lees' representations that such a program existed and that the charges against him [appellant] would be reduced when he made the challenged admissions to Lees. In his testimony, Corporal Lees denied the existence of any such "program" and likewise denied that any promises or misrepresentations were made in regard to the outcome of appellant's case or that appellant was misled in

any way. The suppression issue thus resolved into a weighing of appellant's credibility against Corporal Lees', a determination which the suppression court made in the Commonwealth's favor. " '[I]t is the exclusive province of the [suppression court] to pass upon the credibility of witnesses and the weight to be accorded their testimony.' *Commonwealth v. Garvin*, 448 Pa. 258, 269, 293 A.2d 33, 39 (1972); *see Commonwealth v. Roson, supra,* 461 Pa. 615, 337 A.2d 573; *Commonwealth v. Boyd, supra,* 461 Pa. 17, 334 A.2d 610; *Commonwealth v. Murray, supra,* 460 P. 605, 334 A.2d 255." *Commonwealth v. Bruno,* 466 Pa. 245, 255, 352 A.2d 40, 45 (1976). We find no error in the refusal to suppress evidence of appellant's statements.

The second allegation made by appellant is that the lower court erred in denying his motion to quash the indictment. Appellant sought this relief on the grounds that the prosecution was retaliatory and that it violated his constitutional rights to due process and equal protection. The substance of appellant's argument is as follows: Corporal Lees offered appellant an opportunity to cooperate in leading him to other sources of drugs, and when appellant failed to do so, Lees brought the instant charge of delivery of marijuana. This procedure clearly did not constitute a retaliatory prosecution nor did it violate appellant's constitutional rights.

In *Commonwealth ex rel. Sullivan v. Ashe,* 325 Pa. 305, 307, 188 A. 841, 842 (1937), the court set forth the following analysis:

The fourteenth amendment does not impose such a technical and legalistic uniformity upon all persons and human transactions as to preclude wise differentiations. Classifications are permissible when founded upon reason and logic; they are prohibited only when arbitrary and capricious. As was said by the present Chief Justice of the Supreme Court of the United States in *Graham v. State of West Virginia,* 224 U.S. 616, 630, 32 S.Ct. 583, 56 L.Ed. 917, quoting from an earlier case . . . "The Fourteenth Amendment is not to be considered 'as introducing

a factitious equality without regard to practical differences that are best met by corresponding differences of treatment.' "

The topic of discriminatory prosecutions under the fourteenth amendment was treated by the United States Supreme Court in *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962), where it stated:

[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. Therefore grounds supporting a finding of denial of equal protection were not alleged.

Appellant asserts that he was prosecuted for delivery of marijuana instead of the lesser offense of possession because he did not cooperate in leading the police to other drug sources. Even if we assume that this depiction of the circumstances is completely accurate, the procedure described is in no way unreasonable, arbitrary or unfairly discriminatory. The comment to Pa.R.Crim.P. 319, entitled "Pleas and Plea Agreements," includes the following: "The 'terms' of the plea agreement, referred to in subparagraph (b)(2), frequently involve the attorney for the Commonwealth—in exchange for the defendant's plea of guilty, and perhaps for the defendant's promise to cooperate with law enforcement officials—promising such concessions as a reduction of a charge to a less serious offense, or the dropping of one or more additional charges or a recommendation of a lenient sentence, or a combination of these."

The proper use of prosecutorial discretion is recognized as a necessary part of effective law enforcement. The American Bar Association Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function, The Prosecution Function, section 3.9, discusses the wide discretion the prosecutor enjoys in making the charging decision. Section 3.9(b)(vii) provides,

*inter alia,* as follows: "Illustrative of the factors which the prosecutor may properly consider in exercising his discretion are . . . (vi) cooperation of the accused in the apprehension or conviction of others . . .." This concept is amplified later in section 3.9 at 95–96:

> Prosecutors frequently and properly choose a lenient course with one participation in criminal activity in order to bring other more serious offenders to justice. . . .
>
> [C]harge and sentence concessions are appropriate to a defendant whose "cooperation has resulted or may result in the successful prosecution of one or more other offenders in equally serious or more serious criminal conduct."

Appellant herein was given an opportunity to aid in the apprehension of others involved in the local drug traffic. Although he evinced the desire and intention to cooperate, appellant apparently made no real effort in this direction over a period of approximately six weeks following his initial meeting with Corporal Lees. Appellant's allegation that the charges against him were not reduced because he chose not to lead the authorities to other sources of drugs, whether true or not, is of no significance. The evidence against appellant certainly supported a charge of delivery and appellant did nothing to merit consideration of a reduction in the charge. The matter was properly within the discretion of the prosecutor and appellant refers us to nothing that would indicate an abuse of that discretion.

█ The third claim presented by appellant is that the court below erred in charging the jury. Appellant points to the following portion of the court's charge:

> Now in respect to Defendant's failure to testify, he has a constitutional right and everybody has a constitutional right in both the State and Federal Constitutions to refuse, or fail, or to not take the witness stand. However, the fact that a person does not take the witness stand to testify in his own behalf does not mean he is guilty and the jury must not take any inference from the fact that Defendant does not testify, for some reason or other that for this reason he is likely to be more guilty than not

guilty. This shall not be taken by you that he is guilty of the offense charged. As I indicated before he has a constitutional right not to testify and the mere fact he did not testify shall not prejudice in any manner or create in your mind a feeling that he is guilty of the offense. (NT 69–70).

In *Commonwealth v. Danzy*, 225 Pa.Super. 234, 236, 310 A.2d 291, 292 (1973), this court held that:

> [T]he time for a defendant to decide whether he wants a charge regarding his decision not to testify is before the jury retires. The charge is designed for the protection of the defendant in accordance with the Act of May 23, 1887, P.L. 158, § 10, 19 P.S. § 631; and so long as the defendant does not object it is not error to give the charge, if . . the charge is fairly stated. *Commonwealth v. Thomas*, 429 Pa. 227, 239 A.2d 354 (1968), *Commonwealth v. Schuster*, 158 Pa.Super. 164, 44 A.2d 303 (1945).

Appellant did not request the court not to charge the jury on his decision not to testify. He asserts, however, that the use of the words "failure" and "fail" in the charge makes it not "fairly stated" and requires a new trial. This claim, regardless of its merit or lack thereof, has not been preserved for our review. Pa.R.Crim.P. 1119(b) provides: "No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."

The following exchange occurred at the end of the court's charge:

[BY THE COURT:]

> Gentlemen, is there anything you feel I have inadvertently misstated to the jury or anything you wish the Court to add to the Charge at this point?

BY MR. RUNDORFF: [Appellant's Counsel]

> Do you want specific exceptions or additions or corrections?

BY THE COURT:

> Additions or corrections?

BY MR. RUNDORFF:

None.

BY MR. POPE:

None (NT 71–72).

Because appellant's counsel failed, upon specific inquiry by the trial court, to raise the alleged error in the charge, the court was deprived of the opportunity to consider and possibly correct whatever mistake, if any, it had made. Appellant, having failed to preserve this claim in the court below, may not be granted appellate relief thereon.

 Appellant next contends that the trial court erred in instructing the jury that the testimony of an accomplice, standing alone, was sufficient evidence upon which to find appellant guilty. There can be no doubt that the complained of instruction correctly stated the law of this jurisdiction. *Commonwealth v. Bradley*, 449 Pa. 19, 295 A.2d 842 (1972). Appellant, referring vaguely to precedent in other unnamed jurisdictions, urges us to change this rule. We are not only loath to consider such a change, but are also powerless to alter the decisional law of our supreme court.

The final issue raised in this appeal is whether the lower court abused its discretion in sentencing appellant. Appellant's first line of attack is an allegation that the trial court sentenced him according to a predetermined policy and did not accord him individualized consideration. His argument is based principally on two remarks made by the court at sentencing.

BY THE COURT:

I want to apologize; I was in error when I said 11 months. Upon the set of facts, in Clarion County for one sale it is customary to have a 5½ minimum. (NT SENTENCING 7).

The court went on to pronounce a sentence of 5½ to 23 months incarceration and a fine of $350.00. Defense counsel then made the following inquiry:

BY MR. RUNDORFF:

Two questions, first, as I understand this is the customary sentence for this one sale transaction?

BY THE COURT:

It is what we have imposed in connection with circumstances which are the same or very similar in nature. (NT SENTENCING 7–8).

Appellant contends that these comments demonstrate the trial court's failure to conduct an individualized sentencing evaluation as required by *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). The facts of the instant case differ significantly from those in *Martin*, however, and do not require the same result. Our supreme court summarized the sentencing procedures involved in *Martin* as follows:

In no case was a pre-sentence report ordered. No meaningful inquiry was made into the appellants' backgrounds, individual characteristics, relative culpability or prospects for rehabilitation, despite clear evidence that the appellants' offenses were committed in varying circumstances. In short, all appellants' sentences were based on an abstract predetermination of the sentence to be imposed for the particular offense, without regard to the individual circumstances of particular cases. 466 Pa. at 126–29, 351 A.2d at 654–55.

The circumstances related above stand in sharp contrast to those set forth by the trial court in its opinion, which states:

At sentence court the Defendant presented a report from Frank Bartell, Clinical Director of the Mercer County Drug Council, a letter from Bennie G. Adams, who was Defendant's former football coach and the presentence report which had been ordered by the Court. (Sentencing Opn. at 1).

The court goes on to express its evaluation of the evidence presented at the sentencing hearing and to discuss the various factors it weighed in reaching its sentencing decision.

The Court is further of the opinion that the testimony of drug counsellors, social workers, clergy and often times the community feelings regarding a Defendant are not in time with the facts. While all of these things are helpful

they are certainly not controlling, but are helpful guides for the Court. (Sentencing Opn. at 2).

The Court has sentenced the Defendant to a minimum amount of confinement commensurate with crime committed and the protection of the public and there is no reason why he should not be released on his minimum provided his behavior and conduct merit the release.

Probation without some incarceration is not appropriate. This is a sale of drugs—marijuana—which is a serious crime. The Defendant was under no provocation and certainly the sale of marijuana may have serious consequences. The conduct is something which may recur inasmuch as the Court believes the Defendant will rationalize his misconduct. The Court has seen nothing of this Defendant to indicate remorse or to demonstrate to the Court that he is genuinely sorry, or any realization of the seriousness of the crime. (Sentencing Opn. at 3).

The court in *Martin, supra,* observed that a sentence is normally not disturbed on appeal because the lower court is in a much better position to evaluate the factors involved. However, "the court's discretion must be exercised within certain procedural limits, including the consideration of sufficient and accurate information." *Commonwealth v. Martin, supra,* 466 Pa. at 131–32, 351 A.2d at 657. The two most important informational elements which *Martin* requires the sentencing court to consider are the particular circumstances of the offense and the character of the defendant. Pa.R.Crim.P. 1403 A. (3) requires that this information be included in the pre-sentence report. Not only did the court herein have such a report before it, but the previously quoted excerpts from its opinion demonstrate that it gave these matters independent consideration.

Appellant contends that the court below imposed a "standard" or predetermined sentence for the offense in question upon him without giving to him and his case the individual consideration that the law requires. The court, on the other hand, entertained quite a different view. It explains as follows:

This Court has always strived for consistency in sentencing to avoid disparity. The Court takes into consideration each individual as an individual and takes into consideration the matters involved in the presentence report, any matters introduced at sentencing and the evaluation of the defendant as evidenced by his appearance on the witness stand in any proceeding before the Court. In the instant case the Defendant testified at the suppression hearing.

Like crimes, committed under like circumstances, with like results, should be dealt with by the Courts as similar in nature. The Court believes a duty to so sentence where the facts and the actions and evaluation of the Defendant are so closely similar in nature as to call for sentences with no disparity. (Addendum to Sentencing Opn.).

 Disparity in sentencing is perhaps the most criticized aspect of our present sentencing system. The court in this case availed itself of a presentence report and received the testimony of appellant's witness and other evidence at sentencing. In its opinion, the court explains at length the reasons for its sentencing decision. We believe that it would defy logic for this court to find impropriety or an abuse of discretion merely because a lower court, with a reasonable basis for so doing, has sentenced consistently. A reasoned consistency in sentencing is not an abuse of discretion but rather one of the principal aims of enlightened criminal jurisprudence.

We have examined appellant's other contentions in regard to his sentence and find nothing in his arguments or the record to establish an abuse of discretion.

We would affirm the judgment of sentence.

JACOBS, President Judge, and VAN der VOORT, J., join in this opinion.

CERCONE, Judge, concurring and dissenting:

While I agree that appellant has advanced no argument sufficient to require the granting of a new trial, I believe

appellant should be resentenced. In my estimation the court gave no real consideration to the question of whether appellant was an appropriate candidate for probation under The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–117 (1977). Appellant was a college student who sold a relatively small quantity of marijuana to an acquaintance. He had no prior criminal record and the presentence investigation report urged that he be given a probationary sentence. The court's only cogent reasons for imposing a jail sentence were the standard sentencing practice in Clarion County and appellant's failure to lead the police to a larger marijuana distributor. Sustaining this jail sentence of 5½ to 23 months flies in the face of the wholesome purposes of *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976) and *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).

Therefore, I would vacate the judgment of sentence and remand for resentencing.

HOFFMAN and SPAETH, JJ., join in this concurring and dissenting opinion.