## Commonwealth v. Henry

*William A. Helm, District Attorney,* for Commonwealth.

*Lester H. Zimmerman, Jr.,* for defendants.

ZIEGLER, P.J., March 14, 1980—Before the court are defendants' motions to quash indictments [sic - Informations] which are premised, in essence, upon the assertion that the gambling provisions of the Crimes Code are selectively and discriminately enforced in Mifflin County and that unprosecuted gambling operations have existed and continue to exist in the county. Defendants contend that the instant prosecutions are violative of their constitutional guarantees of equal protection. Evidence on their motions was received and argument was heard on March 12, 1980.[1]

---

1. While we initially harbored some doubt as to the propriety of raising this issue in a motion to quash and speculated as to the proper procedural vehicle and type of relief which would be appropriate where the matter of discriminatory enforcement is raised, it appears from language found in Com. v. Butch, 257 Pa. Superior Ct. 242, 390 A. 2d 803 (1978) (allocatur granted), that a motion to quash is appropriate in such a situation. Although the matter was not discussed at any length therein, said procedure was not disapproved. In Com. v. Dessus, 262 Pa. Superior Ct. 443, 460, 396 A. 2d 1254, 1262

Two countervailing principles must be considered in order to determine whether defendants have established a right to relief on the grounds which they have asserted. First, it has been established that "discriminatory enforcement of the criminal laws is constitutionally prohibited if the discrimination is purposeful or intentional." Com. v. Lewis, 443 Pa. 305, 311, 279 A. 2d 26, 29 (1971), cert. denied, 404 U.S. 1003 (1971). Defendants must, however, "prove the element of intentional and purposeful discrimination before a violation of constitutional rights can be shown." Com. v. Phillips, 248 Pa. Superior Ct. 400, 404, 375 A. 2d 158, 160 (1977). Second, it is crucial to bear in mind the principle that the "mere failure of authorities to prosecute others similarly situated does not constitute a violation of due process or equal protection rights." Id. at 404, 375 A. 2d at 160. This principle was well explained in Kroger Co. v. O'Hara Township, 243 Pa. Superior Ct. 479, 482-83, 366 A. 2d 254, 256 (1976), vacated on other grounds, 481 Pa. 101, 392 A. 2d 266 (1978), wherein it was aptly stated: "Common sense dictates that if proof of non-enforcement against others was a valid defense for the violation of criminal statutes then each and every criminal proceeding would be bogged down in a plethora of defense evidence citing others who escaped prosecution under a particular criminal statute. Therefore, in order to establish their claim, [defendants] are required to prove an intentional exercise of discrimination in enforcement by the . . . authorities and not merely that they were prosecuted while others escaped the

(1978), former President Judge Jacobs termed the selective prosecution/equal protection argument a "defense" without elaborating further.

wrath of the law." The court also stated at p. 482: "Proof of mere laxity of enforcement by the authorities is not sufficient to establish an impermissible exercise of discrimination in the enforcement of the law. . . ." Another relevant factor to be weighed in the balances here is the recognized legitimacy of proper discretion by law enforcement and prosecutorial personnel. "The proper use of prosecutorial discretion is recognized as a necessary part of effective law enforcement . . . [and] . . . the conscious exercise of some selectivity in enforcement is not in itself a . . . constitutional violation." Com. v. Butch, 257 Pa. Superior Ct. 242, 251, 390 A. 2d 803, 807 (1978) (allocatur granted); Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506 (1962).

With these principles in mind we turn to the evidence presented in support of defendants' motions.

By reason of the trial judge's having served as the District Attorney of Mifflin County for a period which ended on June 30, 1969, defense called the trial judge as a witness to testify concerning policy and procedure in effect prior to said date with respect to enforcement of gambling laws. By reason of the remoteness of the trial judge's service, he declined to take the stand. Defense counsel also called District Attorney William A. Helm by reason of his brief service as district attorney since January 7, 1980, and by reason of his having served as assistant district attorney from October 9, 1978, until January 7, 1980. Upon objection of the district attorney to being called, we sustained his objection for the reason that the district attorney was the policy maker during Mr. Helm's brief service as assistant district attorney and by reason of his brief service as district attorney having commenced subsequent to the filing of the complaints.

Defense counsel then called a number of persons involved in law enforcement to testify concerning knowledge of gambling activities and policy with respect to enforcement.

Lee G. Lyter testified that he has been Chief of Lewistown Borough Police since 1961, that he has been with the Lewistown Police Department for 34 years, that he has heard rumors of bingo being played at various places during the past ten years, that he cannot recall any places mentioned in such rumors, that he never participated in bingo or observed bingo being played, that, although he is a member of the Benevolent and Protective Order of the Elks, he does not frequent the club except to pay his dues and attend occasional luncheons in the dining room, that he has heard rumors of gambling payoffs in the county but that he has not frequented any places where such payoffs were made, that he has received no complaints concerning bingo or other forms of gambling in his jurisdiction, that, had he received complaints from persons willing to testify, his department would have pursued enforcement, that enforcement would have been pursued by referring complaints to the Pennsylvania State Police Task Force, that, during the latter part of 1979, he requested the task force to make a general investigation in his jurisdiction for gambling, that his request was prompted only by his belief that occasional investigation is good practice, that he has not concentrated on investigation of gambling because all of his officers are well known and therefore would be unlikely recipients of payoffs, and that he cannot recall attending any carnivals in the county where there was gambling.

Carl McLucas testified that he has been Chief of Police of the Borough of Burnham since 1955, that his force usually consists of one or two full time and

one or two part time personnel, that he has received no complaints of gambling during the past ten years, that, although he has received no complaints of gambling in his jurisdiction during the last ten years, he has heard rumors of gambling at charitable institutions, that, had he received complaints of gambling, he, too, would have referred them to the Pennsylvania State Police Task Force because of lack of personnel to pursue investigation, that, although he belongs to two fire companies, he has not visited either of them during the past ten years, that he belongs to no fraternal clubs and that he observed gambling at a carnival more than two years ago but made no referrence to the task force because he received no complaints concerning the activity.

Carl C. Chambers testified that he has been Chief of Police of the Township of Derry since April 1, 1979, that he retired from the Pennsylvania State Police on September 14, 1979, after 31 years of service, that, although he heard rumors of gambling in the county during the past ten years, he observed no payoffs and made no arrests, that, although he belongs to one fire company, he has visited the fire company only for purpose of paying his dues and attending one bowling banquet, that he is familiar with the practice in clubs of signing a book, paying a fee and thereby chancing the receipt of a benefit by persons whose names may be drawn, that he has occasionally signed such a book but that he has knowledge of no payoffs, that his staff consists of six full time and one part time police, and that his staff is without sufficient expertise and time to adequately enforce gambling laws.

Richard M. Mohler testified that he is now assistant district attorney, that he was district attorney

for a four year term beginning January 5, 1976, that he recalls no gambling prosecutions during his term except the subject prosecutions, that, although he vaguely surmises that there may have been bingo and card games in the county, he has no recollection of any particular institutions but surmises that the institutions were of a charitable type, that he never directed any investigations, that he has never had a detective, that he was not consulted in advance concerning subject prosecutions but that he was advised on the date of filing that the complaints were being signed, and that he understood that the subject prosecutions grew out of a general gambling investigation but that he has no knowledge of the scope thereof except that he was advised on the date of filing that one private club was involved in Centre County and that the investigators were unable to gain entrance to private clubs in Mifflin County.

Angelo Vannicola testified that he is a sergeant in the Pennsylvania State Police, that he is now in charge of the Lewistown Substation, that he has been stationed at Lewistown for 13 of the last 16 years, that he recalls only one gambling prosecution which involved the possession of punch boards, that most gambling arrests are commenced by the vice detail of the Pennsylvania State Police, that, if any complaints were made to the substation, they would be referred to the vice detail, that the Pennsylvania Liquor Control Board maintains surveillance over gambling activities in clubs and private taverns and refers any positive findings to the vice detail, that, although he has heard rumors of gambling in the area, no rumors were of sufficient merit to report to the vice detail, that personnel at his substation rely upon the vice detail for gambling

surveillance in the area, that the vice detail is a covert activity which may not be known to personnel at the substation, that the vice detail recently increased emphasis upon gambling investigations because of rumors of increased incidence of gambling throughout the Commonwealth, that he does not consider bingo and raffles to be gambling because he understands the activities to be based upon donations, that he has no knowledge of any raffles, that he has heard rumors but received no complaints concerning selling of chances by charitable organizations, that police personnel exercise discretion as to the filing of prosecutions, and that it is not unusual for minor violations of vice laws to be overlooked in anticipation of apprehending large scale operations.

Cindy Henry, one of the defendants, testified that she has observed bingo being played for money in four or five Mifflin County establishments during the past year, that she observed a book being signed in two charitable organizations, that she is employed at a private tavern as a waitress and cook, that she is familiar with prices at the tavern, and that the cost of food and drinks at charitable organizations is much less than at the tavern but that she does not know whether or not servers at charitable institutions are volunteers.

Kathy Jo Harris, one of the defendants, testified that she is employed as a waitress at a private tavern, that during the past year she observed gambling activities in one or two charitable institutions, poker machine at one and signing of book at another, and that she made the same observation with respect to cost of food and drinks as did Ms. Henry but that she knew that the servers were compensated.

Donald F. Spagnoletti, one of the defendants, testified that he is the proprietor of a tavern and hotel at Reedsville, that, since 1970, he has observed bingo and book signing at charitable organizations in Mifflin County and has observed gambling at carnivals, and that he made the same observation with respect to cost of food and drinks as did Ms. Henry but that he knew the servers were volunteers.

Francis A. Searer testified that he was district attorney from 1972 until 1976, that he recalled only one gambling prosecution during his term that having been for possession of punch boards, that he was aware of certain lotteries and mechanical devices which he suspected were used for payoffs, that, although he suspected two fire companies of staging bingo, he never witnessed any bingo games, that he does not now know of any organizations which engage in bingo, that he had no investigator while he was in office, and that he never requested police to investigate gambling and does not know whether police would have heeded his request.

Although there has apparently been only one gambling arrest in the county during the past decade—for possession of punch boards by a private individual—that fact standing alone is rather inconsequential. The crucial consideration is whether the testimony of the various witnesses evidenced purposeful or intentional discrimination in the enforcement of the gambling provisions of the Crimes Code. While the officers candidly admitted that they had heard of the existence of various forms of gambling in the county, consisting mostly of bingo, raffles and like activities, no examples of known violations which were ignored and unprose-

cuted were adduced. Most of the insinuations concerning local gambling and gaming activities were founded on hearsay and rumor. A common and significant thread which ran throughout the officers' testimony concerned the activities of the Pennsylvania State Police Task Force (referred to as vice detail by Sergeant Vannicola) charged with enforcement of the gambling laws and investigation of violations thereof. This vice detail, which has apparently been reactivated or rejuvenated by the Commissioner of the Pennsylvania State Police in recent years because of rumors of an increase in the incidence of gambling in the state, works undercover and on its own initiative. Members of this unit could be working in any given area at any given time without their presence being known to local law enforcement officers or even to the local state police. As a result, local and state police channel complaints about gambling activities to this vice detail for investigation. This deference is quite reasonable and understandable. Local authorities are not aware of the undercover activities of the vice detail even if that unit is working within their jurisdiction. To pursue their own investigations and prosecutions could frustrate the activities and work of the vice detail. Local police apparently concluded that the more advisable procedure was to leave such work for this special detail which might be doing it already undercover and unbeknown to local officers. Also, as aptly pointed out by the Chief of Police of Lewistown Borough, investigative work by local police on the local level is frustrated by the simple fact that in the smaller communities (of which Mifflin County is exclusively comprised) the officers are known and unlikely to be able to uncover illicit activity or even observe same. In light of

this factual picture it is not unreasonable and hardly irresponsible for local authorities to consider the vice detail as essentially having preempted the gambling field.[2]

Quite significantly, however, the procedures and policies of the state police vice detail were not examined or explored. There was no evidence presented concerning the workings of this special outfit except those general facts described above.

On the facts presented we are hard pressed to find that defendants have proven intentional or purposeful discrimination in the enforcement of the gambling laws. The facts disclose police awareness, in varying degrees, of the general existence of some gambling activities or rumors of same but scant evidence of such. This hardly compels a finding of intentional or purposeful selective discriminatory enforcement. Rather, given various factors such as the already onerous burdens on relatively small police forces, the difficulty of those forces' infiltration of potential gambling operations and the general deferment of these matters to the special undercover State Police vice detail (whose activities and policies were not explored and are not before us), the record more readily indicates nothing more than the existence of a system of prosecutorial and law enforcement discretion which is not unreasonable or improper.

The evidence presented by defendants here on the issue of selective discriminatory enforcement is far less convincing than that evidence which was mustered by the plaintiffs in Wida v. Rosini, 14

2. The investigations culminating in the arrests in the instant cases were carried out by an undercover officer of the State Police vice detail.

D. & C. 3d 504 (1979), wherein this court, specially presiding, enjoined the prosecution of plaintiffs on the above stated constitutional grounds. That case was submitted on a stipulation entered into by the parties, the most crucial aspect of which was the defendant's candid admission that all gambling activities carried out by nonprofit and charitable organizations were ignored (even where known to law enforcement personnel) and not prosecuted unless a complaint was made concerning same (for whatever reason and from anybody) in which case the matter was automatically prosecuted.

On the facts presented in these three cases, we are constrained to conclude that defendants have not discharged their burden of establishing that their prosecutions resulted from intentional and purposeful discrimination in the enforcement of the gambling laws which violated their constitutional guarantees of equal protection.

## ORDER

Now, March 14, 1980, after hearing and argument of March 12, 1980, defendants' motions to quash indictments are denied.